## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION
## CIVIL ACTION NO. 4:18-CV-00113-JHM-HBB

**ADVANTAGE INDUSTRIAL SYSTEMS, LLC**                                    **PLAINTIFF**

**v.**

**ALERIS ROLLED PRODUCTS, INC.,**
commonly known as **ALLERIS ROLLED**
**PRODUCTS MANUFACTURING, INC.,**
which merged with **COMMONWEALTH**
**ALUMINUM LEWISPORT, LLC**                                              **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is Defendant Aleris Rolled Products, Inc.'s ("Aleris") motion for a protective order and to quash the subpoena issued to non-party Joseph Klink (DN 76). Plaintiff Advantage Industrial Systems, LLC ("AIS") has responded (DN 77). Pursuant to the previous telephonic conference regarding the discovery issue, no reply was permitted.

### NATURE OF THE CASE

AIS entered into a contract with Aleris to erect structural steel and install equipment at Aleris' rolling mill in Lewisport, Kentucky (DN 1 PageID # 2; DN 1-2 PageID # 22-127, Exhibit A: AIA Contract). AIS alleges it performed the work in connection with a $350 million project to convert Aleris' Lewisport Rolling Mill into a state-of-the-art facility with improved rolled aluminum fabrication capabilities for use among various industries, including sheet plate and fabricated products for the automotive, building and construction, and transportation and consumer durable goods industries (DN 1 PageID # 2-8; DN 30 PageID # 540-41 ¶ 2; DN 33 PageID # 556).

Aleris asserts the project cost more than $600 million (DN 33-2 PageID # 573 ¶ 10, Declaration of Eric M. Rychel).

The Complaint alleges that Aleris failed to pay AIS for base contract work and additional costs arising from extra work, delays, disruptions, and inefficiencies on the Project (DN 1 PageID # 2-17). The Complaint asserts a breach of contract claim, a claim under the Kentucky Fairness in Construction Act, and a *quantum meruit*/unjust enrichment claim (Id. PageID # 17-19). AIS seeks a monetary damage award of an amount not less than the base contract amount of $1,518,610.79; impact costs; interest in accordance with KRS 371.405 *et seq.*; attorney fees in accordance with KRS 371.415; collection costs; and pre and post judgment interest (Id. PageID # 19).

Aleris responded to the Complaint with an Answer asserting seventeen defenses and two counterclaims (DN 18 PageID # 199-213). Aleris alleges that AIS committed numerous material breaches of the Contract which have damaged Aleris in an amount equal to or greater than $4,900,000.00 (Id. PageID # 206-11). Aleris also asserts a claim of unjust enrichment/*quantum meruit* (Id. PageID # 211-13). AIS responded to Aleris' counterclaims by asserting ten defenses (DN 19 PageID # 464-68).

ALERIS' MOTION FOR PROTECTIVE ORDER

At issue are five documents prepared by non-party Joseph Klink (DN 76 PageID # 1163-66). AIS has issued a subpoena *duces tecum* to Klink seeking testimony and production of the documents (DN 76 PageID # 1168-69). Aleris contends the documents are privileged (DN 76 PageID # 1173-78). Aleris also asks that Klink's deposition be postponed until the privilege issue is resolved (Id. at PageID # 1179-81). Aleris asks that, if Klink is to be questioned about the

documents, that it be done by written questions (Id. at PageID # 1180). Finally, Aleris asks that Klink's deposition be closed to non-parties (Id. at PageID # 1181).

Aleris contends that when it hired Klink in March 2016, as a consultant on the Lewisport Rolling Mill project, Klink executed a consulting agreement which included confidentiality provisions (Id. at PageID # 1161; *see* DN 76-4). Klink worked on the project until his employment was terminated in November 2016 (DN 76 PageID # 1162-63). Aleris asserts that, while working on the Lewisport project beginning around April 2016, Klink was privy to weekly meetings with Aleris management, in-house counsel and outside counsel to discuss possible litigation arising from the project (Id.). Specifically, Aleris asserts that these meetings afforded Klink "special knowledge and insight to which he might not otherwise have access" and he frequently communicated with Aleris' counsel assessing potential claims for litigation purposes (Id.). Aleris claims Klink prepared the documents during his final week of employment, and the documents are protected from discovery by attorney-client and work-product privilege (Id. at PageID # 1163-66). The documents were previously produced to the undersigned for *in camera* inspection (Id. at PageID # 1163). The documents are highly technical in nature, and the undersigned was unable to determine from their faces whether they constitute privileged attorney-client communications or were prepared in anticipation of litigation.

Aleris describes the first document, identified for purposes of this motion as "Document 1" as having been drafted by Klink in early November 2016 and is "a highly confidential, two-page single spaced document in which Klink discusses the project schedule, project finances, personnel strategy, management strategy, contract administration strategy, and use of certain contractual provisions (or lack thereof) on the project" (Id. at PageID # 1163-64).

Documents 2-4 were transmitted by Klink along with an e-mail, sent on November 12, 2016 to "Aleris's non-testifying consultants, project manager, and several other Aleris employees on the Project" (Id. at PageID # 1164). These included a document entitled "AIS CALP 1 and 2 Mechanical Equipment Installation Contractor Commercial Risk Review," "AIS COR Summary," and "AIS Labor Cost Analysis" (Id.). The e-mail accompanying the documents states that they are "[a]ttached for your review and use is the subject report along with attached documents. The hard copy of the Contract, Report and files is in my vacated cubicle for your use in Claims preparation and defense when needed" (DN 76-5 PageID # 1212).

A complicating factor is that Klink and Aleris have parted ways on unfavorable terms. Aleris claims that Klink has violated his confidentiality agreement by retaining possession of sensitive documents, communicating about the case with opposing counsel, and offering his services as a consultant for the opposing party (DN 76 PageID # 1166-68).

As to Aleris' contemplation of litigation arising from the Lewisport project, Aleris contends that it was aware of the possibility well before November 2016, when it asserts Klink prepared the documents:

> Early on in its scope of work, AIS repeatedly missed deadlines, failed to timely complete CALP 1, which was the first part of its scope. In the summer of 2016, Aleris began analyzing defaulting various contractors on the job. Aleris sent a notice of default to [Valley Electrical Consolidated, Inc.] in August of 2016 and terminated VEC from the project in September of 2016. In addition, Aleris began drafting a notice of default against AIS in early November of 2016, and served a notice of default on AIS on November 16, 2016, a few days after Klink left the project.

(Id. at PageID # 1168) (citations omitted). Aleris states that it conducted name searchs of e-mail communications which revealed frequent communication between Klink and Aleris' counsel (DN 76-3 PageID # 1202).

4

Aleris contends that Document 1 is afforded work-product privilege as it was finalized during Klink's last week of employment and while Klink was acting as a representative of Aleris and its legal team when Aleris was contemplating litigation (DN 76 PageID # 1177-78). Aleris also contends that the document is entitled to attorney-client privilege (Id.).

As to Documents 2-4, Aleris asserts both work-product and attorney-client privileges (Id. at PageID # 1173-77). According to affidavits submitted in support of its motion, Aleris states that Klink's job duties included serving as a representative of Aleris and its in-house counsel (DN 76-1 PageID # 1184; DN 76-2 PageID # 1198; DN 76-3). He was asked to attend the strategy meetings and assist the legal team with matters including evaluating the default of, and claims for and against, contractors such as AIS and VEC (Id.). During this time, Aleris contends, Klink and Aleris' counsel were in frequent communication (Id.). Aleris points to Klink's statement in the transmittal e-mail that the documents are for Aleris', "claims preparation and defense" and describes the documents as containing "a detailed discussion of potential schedule, cost impact delay, and disruption claims by AIS against Aleris as well as negotiation points along with supporting documents, which Klink titled "Risk Review" (DN 76 PageID # 1175). Aleris also notes that Klink's time sheet for his last week lists his work as "AIS Claim Book Prep" (Id.). These facts, Aleris contends, demonstrate the documents were prepared in preparation for litigation (Id.).

Aleris also contends that the documents reflect privileged attorney-client communications because they contain information derived from the strategy meetings with Aleris' counsel and were prepared for counsels' benefit (Id. at PageID # 1176). Aleris contends that, while Klink is a civil engineer, he lacked experience with structural steel, and his discussion of structural steel issues in the documents demonstrates he learned about it during the strategy meetings (Id.).

Aleris submitted an affidavit from Alvin Huenink, a consultant holding the title "Project Services Manager" who worked on the project and to whom Klink "generally reported to . . . for most matters" (DN 76-1 PageID # 1184). Huenink opined that Klink could only have obtained knowledge about some of the issues discussed in the documents through privileged discussions with Aleris' in-house and outside counsel and attendance at the strategy meetings (Id.).

Similarly, Aleris has submitted an affidavit from Aleris Project Director Ramon Mella who also opines that Klink's documents were prepared based on knowledge gleaned from the strategy meetings with counsel (DN 76-2 PageID # 1198). He testifies that the documents are not of the sort prepared by Aleris in the ordinary course of business, and, if they were, Klink would not be the person to draft them (Id.). He concludes that "Klink drafted them in part as part of the turn-over process to inform his successor about pending claims and defenses involving certain contractors" (Id.).

Finally, Aleris has submitted an affidavit from outside counsel Brittany Yantis (DN 76-3), who testified that she works on litigation involving Aleris and manages the database containing Aleris' documents and e-mails collected and preserved for this litigation (Id. at PageID # 1200). Her review of the metadata associated with the privileged documents reveals that they were all last modified during Klink's last week of employment on the project, which was after her firm was retained as outside counsel (Id. at PageID # 1201).

AIS counters Aleris' argument by asserting that it has built its case for privilege founded on "guesswork and innuendo" (DN 77 PageID # 1239). It asserts that the fact that the names of Klink and Aleris' counsel appear together in word-searches of Aleris' e-mail database do not prove that the documents in question reflect those communications were prepared in anticipation of litigation (Id. at PageID # 1239, 1243). Similarly, AIS asserts that the fact that Klink prepared the

6

documents during the time Aleris was communicating with contractors about potential default does not prove that they were prepared in anticipation of litigation (Id. at PageID # 1239, 1244). The affidavits, AIS contends, only speculate that Klink "gleaned" knowledge from the strategy meetings with counsel and do not indicate that anyone asked Klink to prepare the documents or that he told anyone why he prepared the documents (Id. at PageID # 1239, 1247).

AIS also notes that Klink's contract for services does not indicate that he was retained for the purposes of assisting in the legal claim or in anticipation of litigation (Id. at PageID # 1242). To the contrary, AIS states the contract required Klink to provide oversight on the project contractors, vendors and suppliers (Id. at PageID # 1241). AIS points out that, when Klink e-mailed the documents, he did not send them to Aleris' in-house or outside counsel (Id. at PageID # 1243). As to Klink's participation in "strategy meetings," AIS notes that merely because an attorney was in attendance at the meetings does not automatically cast a blanket of privilege over the discussions (Id. at PageID # 1244). Aleris assert that, rather than speculate on the when and why of the documents, it should be permitted to develop the record with Klink's testimony (Id. at PageID # 1245).

## WORK PRODUCT PRIVILEGE

"The work-product doctrine protects an attorney's trial preparation materials from discovery to preserve the integrity of the adversarial process." In re Professionals Direct Ins. Co., 578 F.3d 432, 438 (6th Cir. 2009) (citation omitted). Rule 26 of the Federal Rules of Civil Procedure, which governs the work-product privilege, precludes the discovery of "documents and tangible things that are prepared in anticipation of litigation or for trial by [a party's attorney]." FED. R. CIV. P. 26(b)(3)(A). The prohibition may be overcome only if the party seeking disclosure of the materials proves "it has substantial need for the materials to prepare its case and cannot,

7

without undue hardship, obtain their substantial equivalent by other means." Id. at 26(b)(3)(A)(ii). The Sixth Circuit has adopted the "because of" test for whether material has been prepared in anticipation of litigation. United States v. Roxworthy, 457 F.3d 590, 594 (6th Cir. 2006). In order to determine whether a document constitutes work product—*i.e.*, was prepared in anticipation of, or because of, litigation–a court must ask two questions: (1) whether that document was created because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose, and (2) whether that subjective anticipation was objectively reasonable. Id.; *see also* Gruenbaum v. Werner Enterprises, Inc., 270 F.R.D. 298, 303-304 (S.D. Ohio 2010).

Where documents are prepared in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes, the work-product privilege is inapplicable. Roxworthy, 457 F.3d at 594. However, if a document is prepared in anticipation of litigation, the fact that it that it also serves an ordinary business purpose does not deprive it of protection. Id. at 598-599. Such documents do not lose their work product privilege "unless the documents would have been created in essentially similar form irrespective of the litigation." Gruenbaum, 270 F.R.D. at 304 (*quoting* United States v. Adlman, 134 F.3d 1194, 1202 (2nd Cir. 1998)); *see also* Invesco Institutional (N.A.), Inc. v. Paas, 244 F.R.D. 374, 386 (W.D. Ky. 2007) (A document is not protected if it would have been prepared in substantially the same manner irrespective of the anticipated litigation). Based on these principles, Aleris, the party asserting work product protection, bears the burden of showing that "anticipated litigation was the driving force behind the preparation of each requested document." Gruenbaum, 270 F.R.D. at 304.

## ATTORNEY-CLIENT PRIVILEGE

As a general rule, parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. FED. R. CIV. P. 26(b)(1). "Relevant material for the

purpose of discovery will encompass any matter that may bear upon, or reasonably could lead to other matters that could bear upon, any issue that is or likely may be raised in the case." Invesco Institutional, Inc., 244 F.R.D. at 380. However, the privilege for communications between an attorney and a client is "the oldest of the privileges for confidential communications known to the common law." Id. at 381 (quoting United States v. Zolin, 91 U.S. 554, 563 (1989)).

"In a diversity case, the court applies federal law to resolve work product claims and state law to resolve attorney-client clams." In re Powerhouse Licensing, LLC, 441 F.3d 467, 472 (6th. Cir. 2006). Consequently, Kentucky state law governs this issue of privilege. KY. R. EVID. 503 addresses the attorney-client privilege and provides that a client has a privilege against disclosure of a confidential communication made for the purpose of facilitating legal services to the client or those reasonably necessary for the transmission of the communication. The rule further defines the realm of persons to whom communications may be considered confidential when made for this purpose. These include:

1. Communications between a client or a representative of the client and the client's lawyer or a representative of the lawyer;

2. Communications between the lawyer and a representative of the lawyer;

3. Communications between the client or a representative of the client or the client's lawyer or a representative of the lawyer to another lawyer or a representative of the lawyer representing a party in a pending action and concerning a matter of common interest therein;

4. Communications between representatives of the client or between the client and a representative of the client; or

5. Communications among lawyers and their representatives representing the same client.

KY. R. EVID. 503(b)(1)–(5).

## DISCUSSION

The party asserting privilege must prove its applicability. Boodram v. Coomes, No. 1:12-CV-00057-JHM. 2015 U.S. Dist. LEXIS 198536, *7 (W.D. Ky. Sept. 24, 2015). In this instance, the undersigned concurs with AIS that the record is not sufficiently developed to make a determination. Aleris has offered circumstantial indicators and the opinions of witnesses interpreting those circumstances to establish that the documents are privileged. Aleris has only demonstrated that the documents *might* be privileged.

Analysis begins with the purpose for which Aleris retained Klink on the project. Here, he was not initially retained as a consultant on potential litigation matters. To the contrary, Aleris retained Klink "to perform certain consulting services related to reviewing and streamlining cost and schedule controls and negotiating cost and schedule estimate changes on a daily basis and reporting of the same to the Project Management Team . . ." (DN 76-4 PageID # 1204). The contract was executed on March 16, 2016 (Id. at PageID #1209). Aleris has stated the prospect of litigation with AIS and VEC was not apparent to it until the fall of 2016 (DN 76-1 PageID # 1186).

Aleris indicates that Klink's duties evolved when he was asked to attend strategy meetings. Aleris describes these meetings as involving Aleris employees, consultants, and in-house and outside counsel and covered "a range of topics" (DN 76 PageID # 1162). Huenink's affidavit avers that these topics included claims, defaults, potential lawsuits, and litigation against AIS and VEC (DN 76-1 PageID # 1184). Huenink offers an opinion, based upon his review of the documents, that they contain information which Klink could only have obtained through his attendance at the strategy meetings (Id.). His statement that they were prepared as part of the turn-over process to inform Klink's successor about pending claims is based on "the proximity date" of their creation, and thus an interpretation of fact (Id. at PageID # 1184-85). Mella's

affidavit parrots Huenink's (*compare* DN 76-1, *with* DN 76-2). What is absent from the affidavits is any statement that all information provided during the meetings which Klink "gleaned" was for the sole purpose of obtaining legal advice. "The privilege 'protects only those disclosures necessary to obtain legal advice which might not have been made absent the privilege' and 'is triggered only by a request for a client's request for legal, as contrasted with business advice.'" Desai v. Charter Communs., LLC, No. 3:14-CV-459-DJH, 2017 U.S. Dist. LEXIS 226454 at *10 (W.D. Ky. June 13, 2017) (*quoting* Fisher v. United States, 425 U.S. 391, 403 (1979) and In re Grand Jury Subpoena Duces Tecum, 731 F.2d 1032, 1037 (2d Cir. 1984)). Moreover, only the content of communications with an attorney are privileged. Facts underlying those communications are not. Upjohn Co. v. United States, 449 U.S. 383, 395-96 (1981). While the affiants have expressed opinions about the contents of the documents, only Klink can offer definitive testimony about the source or sources of information for the documents and whether he obtained that information in the course of what would constitute a privileged attorney-client communication.

With specific regard to Document 1, which caption indicates that it is "Observations," Yantis' affidavit states that it was last modified on November 7, 2016, Klink's last week of work on the project (DN 76-3 PageID # 1201). The document is undated, and Aleris does not identify when the document was created. Aleris states that it was part of Klink's wrap-up to apprise his successor of "pending claims and defenses involving certain contractors" (DN 76-1 PageID # 1185). The undersigned's review demonstrates that this is not an accurate characterization. Rather, the document appears to be Klink's opinions about problems encountered on the project and assignment of responsibility for those problems. Aleris does not represent that Klink prepared it at the request of legal counsel or for use by legal counsel. To the contrary, Aleris believes it was

11

for the benefit of Klink's successor, which would appear to be a business purpose. Again, Klink can offer definitive testimony on the when and why of the document.

Regarding Documents 2-4, again Yantis has only determined from their metadata that they were last modified on November 10 and 12, 2016 (DN 76-3 PageID # 1201). She has not testified as to when the documents were originally created. While the e-mail which transmitted the documents states they are provided "for your use in Claims preparation and defense when needed," Aleris has not established that they were originally prepared for that purpose (DN 76-5 PageID # 1212). The undersigned is mindful that Klink was not originally retained to provide litigation-related assistance, and the primary scope of his employment, per the contract, was limited to scheduling and cost efficiency consulting. "Whether a particular communication is privileged depends (absent waiver) not on what use was ultimately made of the communication, but on the facts and circumstances under which the communication was made." Lexington Public Library v. Clark, 90 S.W.3d 53, 59 (Ky. 2002). Consequently, if the documents were prepared for a business purpose, they are not converted to a privileged communication because they are might be useful in litigation. Similarly, while Klink's billing records indicate that he worked on "AIS Claim Book Prep" during the time when documents 2-4 were last modified, this does not establish whether the documents were created then specifically for litigation purposes or were business-related consulting documents which he modified. The e-mail was sent to seven recipients, none of whom were attorneys (DN 76-5 PageID # 1212). Aleris does not identify who requested Klink to prepare the documents. Presumably Klink can provide answers to these questions.

For these reasons, the undersigned concludes that AIS should be permitted to depose Klink and question him, not about the contents of the documents, but as to the dates, purposes and circumstances surrounding their creation and transmission. Aleris is concerned that Klink will

violate the confidentiality provisions in his consulting contract, but this does not establish a reason to deny AIS an opportunity to question him in order to obtain information which might disprove Aleris' privilege assertions. If Klink violates an enforceable confidentiality agreement, then he does so at his own risk. Aleris is also concerned that Klink's animosity toward it will motivate him to testify adverse to Aleris' interests; however, the undersigned cannot presume that this animosity would cause him to offer perjured testimony.

As to Aleris' suggestion that Klink be deposed by written questions to avoid "time, expense, and logistical difficulties" (DN 76 PageID # 1181), in this instance, it appears to the undersigned that an oral deposition will be more efficient, as it will allow follow up questions and cross-examination.

Finally, Aleris has asked that non-parties be prohibited from attending the deposition (Id.). Aleris explains that it is involved in separate litigation with VEC in Kentucky state court and is concerned that VEC might become privy to testimony by Klink that discloses privileged information (Id.). Pretrial depositions are not public components of a civil trial. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33 (1984). Aleris could move to seal the transcript of the deposition if his testimony encroaches upon a privilege, but this would be of limited value if a non-party is allowed to hear the testimony itself. Given the high importance accorded privileged communications, in this particular instance restricting attendance at the deposition to party attorneys and party representatives is a reasonable means of ameliorating this risk and causes no prejudice to AIS. There no reason, however, to postpone Klink's deposition.

## ORDER

**WHEREFORE**, the motion to quash the subpoena (DN 76) is **GRANTED IN PART**, **DENIED IN PART**, and **DEFERRED IN PART**.  The motion to quash the subpoena *duces tecum* issued to Joseph Klink is denied.  However, in regard to the documents for which privilege is claimed, he may only be questioned at this time about facts associated with whether the documents are privileged and not about the contents of the documents.  Ruling on whether the documents are privileged is deferred.  Should the documents be later determined not privileged, then a second deposition will be authorized.  The requests that the deposition be postponed or conducted by written questions are denied.  The request that attendance at the deposition be limited to party attorneys and representatives is granted.

H. Brent Brennenstuhl
United States Magistrate Judge

November 6, 2020

Copies:      Counsel of Record