## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION
## CIVIL ACTION NO. 4:18-CV-00113-BJB-HBB

**ADVANTAGE INDUSTRUAL SYSTEMS, LLC**                                **PLAINTIFF**

**v.**

**ALERIS ROLLED PRODUCTS, INC.**                                     **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the motion of Plaintiff Advantage Industrial Systems, LLC ("AIS") for an Order permitting discovery depositions to be cross-noticed with an action originating in state court against Defendant Aleris Rolled Products, Inc. ("Aleris") by a non-party to this case (DN 86). Aleris has responded in opposition (DN 90). Aleris has also filed a motion to establish a limit on the number of depositions which AIS may take in this case (DN 87). AIS has responded (DN 91).

### NATURE OF THE CASE

AIS entered into a contract with Aleris to erect structural steel and install equipment at Aleris' rolling mill in Lewisport, Kentucky (DN 1 PageID # 2; DN 1-2 PageID # 22-127, Exhibit A: AIA Contract). AIS alleges it performed the work in connection with a $350 million project to convert Aleris' Lewisport Rolling Mill into a state-of-the-art facility with improved rolled aluminum fabrication capabilities for use among various industries, including sheet plate and fabricated products for the automotive, building and construction, and transportation and consumer durable goods industries (DN 1 PageID # 2-8; DN 30 PageID # 540-41 ¶ 2; DN 33 PageID # 556). Aleris asserts the project cost more than $600 million (DN 33-2 PageID # 573 ¶ 10, Exhibit B: Declaration of Eric M. Rychel). The Complaint alleges that Aleris failed to pay AIS for base

contract work and additional costs arising from extra work, delays, disruptions, and inefficiencies on the Project (DN 1 PageID # 2-17). The Complaint asserts a breach of contract claim, a claim under the Kentucky Fairness in Construction Act, and a quantum meruit/unjust enrichment claim (Id. at PageID # 17-19). AIS seeks a monetary damage award of an amount not less than the base contract amount of $1,518,610.79; impact costs; interest at a rate of 12% per annum in accordance with KRS § 371.405 et seq.; attorney fees in accordance with KRS § 371.415; collection costs; and pre- and post-judgment interest (Id. at PageID # 19).

## AIS'S MOTION

VEC, Inc. ("VEC") has an action pending in Hancock County, Kentucky, Circuit Court, case number 18-CI-77, against Aleris, as well as AIS, Louisville General Contracting, LLC, Hancock County, Kentucky, and the City of Lewisport, Kentucky (DN 86-1 PageID 1295-96). According to its complaint, VEC contracted with Aleris for the procurement and installation of electrical wiring and components for the project described above (Id. at PageID 1300-01). VEC alleges that Aleris breached the contract and, as a consequence, VEC recorded mechanic's and materialman's liens to secure payment (Id. at PageID 1308-13). VEC's claims in the action are for breach of contract, quantum meruit/unjust enrichment, breach of the Kentucky Fairness in Construction Act, and foreclosure of the aforementioned liens (Id. at PageID 1313-19).

AIS and VEC have earlier cross-noticed several discovery depositions for use in both the present federal case and the state court case (DN 86 PageID 1289; DN 90 PageID 1897). Counsel for both AIS and VEC have attended the depositions and each has questioned the witnesses (Id.). Aleris opposes the practice going forward, contending that VEC's participation is unduly complicating the depositions, as well as extending their durations (DN 86 PageID 1289; DN 90 PageID 1902-10).

AIS contends that the nature of the claims it has asserted against Aleris in this action are similar to those asserted by VEC in the state court action (as well as Aleris' counterclaims in both actions) and both arise from the Lewisport Rolling Mill upgrade project (DN 86 PageID 1289-90). Because of this, AIS asserts, the facts related to both cases are substantially the same (Id.). AIS notes that, although district courts possess broad discretion in directing discovery, here taking depositions jointly is more efficient and avoids duplicative efforts (Id. at PageID 1290-93). AIS further observes that the alternative would be to separately notice the deposition in the state court case to begin immediately after the conclusion of the deposition in this case, whereupon the attorney for VEC would ask many of the same questions just asked in the previous deposition (Id. at PageID 1292). AIS argues that this court would have no jurisdiction over the state court case and could not prohibit back-to-back depositions (Id. at PageID 1291). Moreover, while VEC is not a party to this case,[1] both VEC and AIS are parties to the state court action against Aleris, and both would participate in a deposition noticed solely in that case (Id.). As to any burden imposed on Aleris by having to prepare a witness for a deposition involving two, separate cases, AIS contends that this is no greater burden than preparing a witness for two separate depositions (Id. at PageID 1292).

## ALERIS' RESPONSE

Aleris states that the parties have been working diligently to complete discovery and have nearly completed all document-based discovery, as well as numerous depositions (DN 90 PageID 1896). The task has been challenging as the case is document-intensive and involves a

---

1   The present lawsuit is AIS's second assertion of claims against Aleris arising from the Lewisport Rolling Mill contract. VEC was named as a defendant in that action; however, the Court concluded that the interests of AIS and VEC were not adverse, and, once the parties were realigned, the action was dismissed without prejudice on jurisdictional grounds. Advantage Industrial Systems, LLC v. Aleris Rolled Products, Inc. et al, No. 4:17-CV-00109-JHM-HBB, DN 89, p. 4-5 (June 18, 2018) (Upon order by the Court that VEC be designated as a plaintiff, "there [was] no longer subject-matter jurisdiction based on diversity of citizenship[,]" as VEC and Aleris are both Ohio corporations.)

significant amount of electronic discovery (Id.). Hence, the case has already been pending for approximately three years, with four amendments to the scheduling order (Id. at PageID 1896-97). Aleris notes that AIS has taken 14 deposition days to depose 9 witnesses and has noticed an additional 6 deposition days for 4 new witnesses (Id. at PageID 1897). VEC has attended nearly every deposition thus far, and "has asked questions – usually significantly more than AIS" (Id.). Aleris notes that discovery closes on May 31, 2021, approximately two months from now (Id. at PageID 1898). Aleris expresses concern about the number of depositions yet to be taken (Id.). This concern is the subject of Aleris' own motion and will be discussed later in this Order.

Turning to VEC's participation, Aleris contends that more than half of the depositions taken thus far in the case have required a second day, and this because of VEC's questioning which typically lasts for over 4 hours or more (Id.). Aleris argues that, without limitation of non-party participation, there is little likelihood that discovery can be completed by the current deadline (Id. at PageID 1900). In addition to the delay inherent in VEC's participation, Aleris asserts that it imposes an unreasonable burden in preparing witnesses for "additional and irrelevant topics of questioning" as relates to this case (Id. at PageID 1902).

## ALERIS' MOTION

As a companion to its opposition to AIS's efforts to have VEC participate in depositions, Aleris also asks that AIS be limited in the number of depositions yet to be taken in the case (DN 87). Aleris notes that AIS has thus far taken the depositions of 8 witnesses and has noticed the depositions of 2 additional witnesses (Id. at PageID 1855). None of these witnesses, Aleris observes, are its employees (Id. at PageID 1856). Rather, they are former Aleris employees or employees of third parties (Id.). Aleris states that AIS has now represented an intention to depose up to 24 witnesses (Id.). Aleris concedes that the parties had an agreement that the limit of

4

depositions imposed by FED. R. CIV. P. 30 would not strictly apply; however, this agreement, Aleris asserts, was based upon its understanding that AIS would be taking far fewer depositions than what it now requests (Id. at PageID 1856-57). Conversely, Aleris states that it has only noticed 4 depositions in the case (Id. at PageID 1857). Further, Aleris is concerned that with the discovery deadline closing on May 31, 2021, and that it has taken three years to schedule and complete 14 witness depositions, it may be unlikely for the parties to complete twice the number of depositions in the remaining two months (Id.).

Aleris challenges AIS's strategy in scheduling the depositions, indicating that AIS has chosen to depose less important witnesses with peripheral knowledge first, when key witnesses could have been deposed first, eliminating duplication and lack of knowledge in the depositions thus far (Id. at PageID 1862-64). Aleris also argues that AIS has not utilized Rule 30(b)(6) for the designation of corporate representatives with broad knowledge and, instead, has focused on individuals with much more limited scope of involvement (Id. at PageID 1862-63). Consequently, Aleris states that AIS should not be permitted to engage in protracted depositions because it has chosen to pursue an inefficient approach to gathering information (Id. at PageID 1864). In so doing, Aleris contends, AIS is imposing upon it a burden that is disproportionate to the needs of the case (Id. at PageID 1865-66). Rather, Aleris argues, limits on the number of depositions should be imposed to force AIS to target the most important, and therefore, most relevant witnesses in manner that is both financially and temporally economical (Id. at PageID 1867-68). Aleris proposes that both parties be limited to 15 depositions (Id. at PageID 1866, 1870). In the alternative, Aleris proposes that AIS be allocated a cumulative block of time (it suggests 36 hours) during which AIS must complete questioning in as many depositions as it wished, but with questioning in any particular deposition limited to 4 hours (Id. at PageID 1870).

## AIS' RESPONSE

AIS notes that this case is complex (DN 91 PageID 1923). AIS seeks in excess of $7.5 million, Aleris' counterclaim is $4.9 million, and thus the total amount at stake is in excess of $12 million. Aleris has produced in discovery over 1 million pages and the overall total produced by the parties and third parties exceeds 2,358,000 pages (Id. at PageID 1914-15). Aleris' initial disclosures listed 151 individuals associated with 21 different entities as having discoverable knowledge (Id. at 1915). AIS takes issue with whether Aleris, having agreed to an earlier waiver of limitations of depositions normally imposed under the Civil Rules, can now assert a complaint that AIS should be limited (Id. at PageID 1915-18). AIS interprets the stipulation in the Joint Discovery Plan to only allow the parties to seek limitation or termination of a particular deposition (Id. at PageID 1917-18). Moreover, AIS asserts that the depositions it has thus far taken were for purposes of trial, or *de bene esse*, and therefore would not even count toward the limit on number of depositions under the Rules (Id. at PageID 1920). As to Aleris' contention that it should have utilized Rule 30(b)(6) to obtain the designation of corporate representatives, AIS points out that a responding entity is entitled to designate more than one individual to respond to the inquiry and that this could result in multiple witness depositions (Id. at PageID 1925-26). Finally, AIS asserts that in its approach to prioritizing deponents, it organized its approach to discovery in reliance upon what it understood to be an agreement dictating no limitations on the number of depositions.

Turning to the substance of the additional depositions, AIS notes that it should come as no surprise that, as litigation progresses and discovery unfolds, additional individuals are identified as having necessary information. In support of its contention that the depositions it has taken thus far have been necessary to procuring relevant evidence in the case, AIS discusses the 9 witnesses (including two 30(b)(6) witnesses) it has thus far deposed:

6

1. <u>Darrin Richardson.</u>  Deposed January 7, 2021 and February 12, 2021. Counsel for AIS asked questions for approximately 5.25 hours total. Aleris identified Mr. Richardson as "Scheduler" for CH2M Hill, the architect and construction manager for the project until Aleris removed CH2M Hill.  One of the main issues in this case is the many delays that occurred during the project and who is responsible for the delays.  Therefore, the scheduler for the construction manager on the project was a very important witness to depose.  In an attempt at Monday morning quarterbacking, Aleris questions whether Mr. Richardson should have been deposed because he claimed numerous times not to know or remember the answer to a question.  Besides the fact that it was reasonable and prudent to depose the construction manager's employee in charge of scheduling in a case where the schedule is a major issue, and AIS did not what he would or would not recall, Mr. Richardson provided helpful information on the process for creating and updating the project schedule, delays on the project, deadlines that were pushed back, and Aleris's resistance to grant extensions even with all the timing problems that occurred.

2. <u>Michael Boyken.</u>  Deposed August 27, 2020 and February 2, 2021. Counsel for AIS asked questions for approximately 4 hours total.  Aleris identified Mr. Boyken as the "Senior Project Manager" for Aleris with "general knowledge of planning and implementation of project, and delays."  Mr. Boyken had intimate knowledge of the delays, impacts and inefficiencies that AIS faced on the project, which is a central issue in this litigation.

3. <u>Keith Riding, Rule 30(b)(6) Representative of Cives Corporation.</u> Deposed October 21, 2020, and counsel for AIS asked questions for approximately 4 hours.  Cives was the chief steel supplier for the CALP 1 Line phase of the project, but was removed before beginning of the CALP 2 Line phase of the project.  AIS's job included erecting the steel supplied by Cives. Aleris identified Mr. Riding, Operations Manager of Cives, as having "knowledge regarding the steel delivery, fabrication and erection."  There were an extraordinary number of fabrication errors by Cives, along with constantly changing specifications and drawings from Andritz (one of the equipment suppliers, see below), which caused a substantial delay in steel erection by AIS, and this had an enormous impact on the rest of the project schedule.  AIS was entitled to depose Cives on these issues.

4. <u>James Turner, Rule 30(b)(6) Representative of Covenant Steel Warehouse, Inc.</u>  Deposed September 9, 2020 and October 6, 2020. Counsel for AIS asked questions for a total of approximately 7.25 hours. Mr. Turner was the project manager for Covenant, which Aleris identified in its initial disclosures as having knowledge "regarding the

back charges against AIS, delays, damages and AIS' performance on the project." Aleris canceled the steel supply contract with Cives for the CALP 2 Line, and contracted with Covenant to supply it. AIS was scheduled to commence erection of the structural steel on CALP 2 on March 2, 2016, but Aleris did not enter into the contract with Covenant until June 2016, and the steel did not start arriving until August 6, 2016. Aleris never informed AIS that it had switched steel suppliers for CALP 2 and delayed the start of construction of CALP 2 until months after that decision was made. AIS was entitled to depose Covenant about these delays in contracting for and delivering the steel for CALP 2 and Mr. Turner's alleged knowledge of AIS's performance on the project.

5. Brad Senn, Rule 30(b)(6) Representative of Hall Contracting of Kentucky, Inc. Deposed January 7, 2021, and counsel for AIS asked questions for approximately 2.5 hours. Hall was one of the contractors responsible for the concrete foundations for the project, and Hall subcontracted some of the work to Brasfield & Gorrie (see below). These concrete foundations had to be complete for AIS to erect the steel on them. Aleris identified Mr. Senn in its initial disclosures as someone who "may have knowledge regarding the foundation issues and delays."

6. Joseph Klink. Mr. Klink was an independent contractor for Aleris who Aleris identified as "Estimator" with "with knowledge regarding estimating, purchasing, change orders, backcharges being sought against AIS, AIS' work on the project, delays on the project and Aleris' damages." His job responsibilities included reviewing and streamlining cost and schedule controls and negotiating cost and schedule estimate changes on a daily basis (DN 76-4, PageID# 1204). His first deposition was mainly limited to the circumstances surrounding documents that Aleris has claimed are privileged. Aleris hired three independent contractors (Klink, Al Huenink, and Jack Burnett, who are also on this list) whose duties included challenging change orders previously approved by Ramon Mella of Aleris (who is on this list) in order for Aleris to reduce its costs, which were maintained and prominently displayed in internal Aleris communications. Discovery to date has revealed that the conduct of Klink, Huenink and Burnett includes the repudiation of approved change orders, the refusal to pay for work already performed and inappropriate refusal to negotiate change orders in good faith. Instead, they engaged in strongarm tactics to compel contractors to accept unfair concessions. AIS needs to depose these three individuals concerning these actions and the motivations behind them, and their ultimate opinions on whether or not Aleris should have paid the change orders and other already performed work of AIS.

7. <u>David Drenth.</u> March 3, 2021 and March 12, 2021. Counsel for AIS asked questions for a total of approximately 5.5 hours. Aleris identified Mr. Drenth as "Senior Construction Manager" for CH2M Hill and someone who may have "knowledge regarding AIS' work performed on the project." At his deposition Mr. Drenth had specific and direct knowledge of several delays and/or impacts on the project that directly related to AIS's claims and defenses in this case.

8. <u>John Elcho.</u> Deposed March 9, 2021. While counsel for AIS does not yet have the transcript to confirm how long his examination took, the deposition only took one day, and counsel for VEC also asked questions. Aleris identified Mr. Elcho as "Structural Construction Manager" of CH2M Hill with "knowledge regarding AIS' work performed on the project." Mr. Elcho was CH2M Hill's "boots on the ground" person with knowledge about steel fabrication and erection. Mr. Elcho had knowledge about the steel delays and impacts that AIS faced and that are the subject of the instant case.

9. <u>John Marcotte.</u> Deposed March 16 2021, and counsel for AIS asked questions for approximately one hour. Aleris identified former Aleris employee Mr. Marcotte as "IPR, Lead Scheduler" with "knowledge regarding project scheduling and delays." He was in charge of scheduling the project for Aleris, and he was deposed for the same reasons as Mr. Richardson, the scheduler for CH2M Hill, since scheduling is a crucial element of this case.

(<u>Id.</u> at PageID 1927-31).

AIS also explains the nature of the information it seeks from an additional 19 witnesses (including six Rule 30(b)(6) witnesses):

1. <u>Joseph Klink.</u> When the Court rules on the issue of whether the Klink documents are privileged, AIS will complete his deposition. There is no dispute that he is a material witness that AIS has a right to depose.

2. <u>Rule 30(b)(6) Representative of Otto Junker.</u> Otto Junker was one of the major equipment and machinery suppliers for the project and subcontracted the packing and shipping of its hoods and furnaces for the project, which arrived out of sequence, mislabeled, or unlabeled. Parts were also missed from shipments. These issues caused substantial delays in finding and assembling this machinery and equipment at a project with inadequate lay down space that hampered the ability to uncrate and place the equipment on the ground while corresponding parts were located and assembled. AIS needs to conduct this deposition to learn why the equipment was manufactured late, why a third party

9

      was contracted to do the packing and shipping, why the shipping was late, mislabeled, unlabeled and incomplete, and why the promised advanced shipments and offsite storage with just in time delivery (which was a foundation and assumption of AIS's bid) did not occur.

3. <u>Rule 30(b)(6) Representative of Brasfield & Gorrie.</u> Brasfield & Gorrie was a contractor involved with the concrete foundations on the project. AIS would erect the structural steel once these foundations were complete. The concrete foundations for the CALP 1 line were delayed by three months. AIS needs to depose Brasfield & Gorrie about this delay issue.

4. <u>Rule 30(b)(6) Representative of Andritz Austria.</u> The Andritz branch in Austria provided some of the equipment in one part of the facility, and the Vienna branch (see below) provided other equipment in another part of the facility. One branch procured its equipment from Europe and the other procured its equipment from Asia. AIS needs to investigate the issue of whether the equipment produced by the two different branches did not properly work together, thus requiring substantial engineering changes, including some in the field, that contributed to delays on the project. Indeed, Aleris has filed suit against Andritz in United States District Court for the Northern District of Ohio, Eastern Division, Case No. 1:20-cv-00281-JPC, seeking to recover over $30 million in damages for, among other things, delays allegedly caused by Andritz (Aleris's Complaint in that case, attached hereto as Exhibit A, ¶ 16(c), (d), and (k-o)). AIS believes Aleris is seeking to recover from Andritz many of the same damages it seeks to recover from AIS in this suit. AIS first learned the suit was filed ten months after Aleris filed it when Andritz served a subpoena on AIS. From AIS's perspective, Andritz was under the control of Aleris, and delays and deficiencies caused by Andritz would be attributable to Aleris. AIS believes that issues with Andritz may be a major cause of the delays with this project, and it has the right to conduct thorough discovery of Andritz personnel on these delay issues.

5. <u>Rule 30(b)(6) Representative of Andritz Vienna.</u> See above.
AIS needs to depose a representative from each Andritz entity because each provided different equipment to different parts of the facility. These deponents will have information related to the drawings and specifications that went through numerous changes to the point that the bid packages were incomplete and had to be supplemented, causing delays and cost increases. The below Andritz employees located on site will likely not possess the relevant information on these issues. The number of Andritz depositions is reasonable, as no one person has knowledge of all relevant issues on a project of this size.

6. <u>Andritz employee Roderick Froebischer.</u>  Aleris identified Mr. Froebischer as "Superintendent" for Andritz.  He worked on site at the project and, according to emails produced in discovery, was intimately involved in communications between Andritz and Aleris about these design change issues for the equipment provided by Andritz.

7. <u>Andritz employee Ron Piotrowski.</u>  Aleris identified Mr. Piotrowski as "Senior Project Manager" for Andritz.  He was one of the highest ranking Andritz employees on site, and AIS believes that he possesses extensive knowledge of the problems Andritz experienced in regard to the delays in providing equipment.  AIS wants to question Mr. Piotrowski about these delay issues, including numerous revisions to drawings, packages being submitted to bid by Aleris before the specifications were complete, and bid amendments and change orders later submitted because the original scope of work was either unclear, incomplete or expanding.

8. <u>Andritz employee Dirk Zuehlke.</u>  Aleris identified Mr. Zuehlke as "Head of Equipment Erection Department of Andritz."  He was on site at the project and, according to emails produced in discovery, was intimately involved in communications between Andritz and Aleris about these design change issues.  AIS wants to depose him for the same reasons it wants to depose Mr. Piotrowski and Mr. Froebischer.

9. <u>Rule 30(b)(6) Representative of General Motors Corporation.</u>  Aleris constructed these CALP lines to, in part, manufacture parts for GM, and GM provided funding to Aleris for the project.  AIS believes that the requirements placed on Aleris by GM related to timing of funding and secrecy of the project "infected Aleris' dealings with its subs, in which concealment, deceit and outright falsehoods were increasingly employed to keep work progressing despite chronic funding shortfalls and their ripple effect through all of the work."  Complaint, DN 1, ¶¶ 46-52.  Regardless of the number of delays on the project, AIS believes that Aleris refused to move the completion dates back because it had a hard deadline for completion due to the time requirements set forth in its advanced procurement agreement with GM, by which GM agreed to purchase a substantial portion of the facility's production.  AIS has the right to question GM on these issues.

10. <u>CH2M Hill employee Jerry Hymer.</u>  Aleris identified Mr. Hymer as "Field Supervisor" for CH2M Hill.  Mr. Hymer was a high-ranking employee of CH2M Hill, and AIS believes he will have knowledge of why Aleris terminated CH2M Hill and, perhaps more importantly, the arrangements, or lack thereof, that Aleris made with C2HM Hill to ensure a smooth transition in replacing CH2M Hill for construction management, engineering and architectural services. AIS believes that Aleris's decision to terminate CH2M Hill was another significant cause of delay.

11. <u>Aleris employee Ramon Mella.</u> Aleris identified Mr. Mella as "Project Director" with "knowledge of the overall project, field installation issues with AIS, including AIS' scope of work, delays on the project, change orders, backcharges and Aleris' damages." Mr. Mella was in charge of the day-to-day operations and planning of the project. He was also represented to AIS as authorized to approve AIS change orders, which were later rejected. Aleris cannot reasonably question AIS's need to depose him. Given his primary role for Aleris in the project, AIS anticipates it may need over 7 hours to depose him, which is reasonable in a case such as this.

12. <u>Aleris employee Andy Ishmael.</u> Aleris identified Mr. Ishmael as "Vice President, North American Automotive" with "general knowledge of the overall project at an executive level." Mr. Ishmael was liaison between the project and the board of directors of Aleris. Mr. Ishmael also oversaw the payment process for the project, including rejecting AIS change orders approved by Mr. Mella. Mr. Ishmael has knowledge at the higher levels of Aleris that other Aleris employees do not.

13. <u>Aleris employee Jeff DeRossit.</u> Aleris identified Mr. Derossitt as "ABS Maintenance and Engineering Manager" with "knowledge of the overall project, field installation issues with AIS, including AIS' scope of work, delays on the project, change orders, backcharges and RFI process." Based on document discovery to date, Mr. DeRossit is an Aleris employee with significant project duties and interface with AIS. Therefore, AIS has the right to question him regarding AIS's work on the project.

14. <u>Aleris employee Chris Wood.</u> Aleris identified Mr. Wood as Senior Project Manager/Field Engineer, and he took over for Michael Boyken as Aleris's chief engineer on the project. AIS is entitled to depose Aleris's Senior Manager for the project.

15. <u>Aleris employee Steve Demetriou.</u> Mr. Demetriou is the former president of Aleris and was in charge of procuring financing for the project including negotiations with General Motors Corporation for funding and/or future work that would pay for the project. AIS wants to depose Mr. Demetriou for the same reason it wants to depose GM.

16. <u>Aleris employee Robert Miller.</u> Aleris identified Mr. Miller as "Procurement and Purchasing" with "knowledge regarding contracts, contracts awarded, payment, change orders, purchasing, and contract management for vendors." Based on document discovery to date, Mr. Miller is an Aleris employee with significant project duties and interface with AIS. Therefore, AIS has the right to question him regarding AIS's work on the project.

17. <u>Alvin Huenink.</u>  Huenink served as a consultant for Aleris, and Aleris identified him as "Project Services Director." Aleris stated he was the person to whom Klink reported for most matters (*See* Huenink Affidavit at DN 76-1, PageID #1184). AIS has the right to depose Huenink because of his role in rejecting AIS change orders and other pay requests.

18. <u>Jack Burnett.</u>  Mr. Burnett is another consultant, and Aleris identified him as "Contracts Lead" who had "knowledge of contract administration." Mr. Burnett, along with Huenink and Klink, played a major role in rejecting AIS change orders and other pay requests.

19. <u>Rule 30(b)(6) Representative of Aleris.</u>  It is necessary for AIS also to depose a Rule 30(b)(6) representative of Aleris to answer questions authoritatively from which admissions may be fairly inferred.

(<u>Id.</u> at PageID 1931-36).

## DISCUSSION

The motions present two questions: (1) How many depositions should AIS be permitted to take; and (2) may VEC cross-notice the depositions with the state court action so that it can attend and question the witnesses?

Generally, courts have broad discretionary authority to determine the scope and method of discovery based upon the circumstances of each case. <u>Lewis v. ACB Bus. Servs., Inc.</u>, 135 F.3d 389, 402 (6th Cir. 1998). Specifically, a court must limit discovery if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . [or if] the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." FED. R. CIV. P. 26(b)(2)(C). As an initial observation, the undersigned does not interpret the Joint Discovery Plan as forfeiting Aleris' ability to oppose what it considers an excessive number of depositions. AIS argues that

13

developments in the case have led to its expansion of the number of deponents. Thus, neither party could have foreseen the full extent of discovery at the time they prepared the Joint Discovery Plan.

It is true that AIS has already taken a significant number of depositions in the case and now seeks to take twice as many more. However, this is a complex case involving a large construction project involving many individuals and business entities. Millions of pages of documents have been produced in discovery. Likewise, the amounts in controversy are multiple millions of dollars. While Aleris may believe that AIS has not approached the taking of depositions in the most efficient or economical manner, AIS has provided a reasonable explanation for why it took the depositions completed thus far, and why the additional depositions are needed. In sum, the undersigned is persuaded that, while AIS plans to take a large number of depositions, the nature of the case justifies the endeavor.[2]

Turning to the whether non-party VEC should be permitted to participate in questioning the deponents, AIS is correct that this Court has no power to direct what happens in the state court case. However, this Court can direct discovery in *this* case, including whether a non-party may question a witness in a deposition noticed in this case. A cross-notice of deposition in another case does not empower the nonparty to, in essence, "hijack" a deposition noticed in this case and interpose its own questioning. Both Aleris and AIS have expressed desire that the case remain on track for discovery to be completed by the current discovery deadline. Aleris has complained that VECs' involvement in the depositions has caused them to take substantially more time for completion. AIS has admitted this is true. "Any depositions that extended beyond 7 hours did so because they included examination by counsel for VEC, Inc. . . ." (DN 91 PageID 1931). It is this

---

[2] Given that the undersigned has concluded that the total number of depositions by AIS, both past and anticipated, is permissible, it is unnecessary to determine if some or all of the past depositions were *de bene esse* for purposes of whether they count as discovery depositions. *See* Murillo v. Dillard, No. 1:15-CV-00069-GNS, 2017 U.S. Dist. LEXIS 15391, at *13-15 (W.D. Ky. Feb. 3, 2017).

14

Court's responsibility to ensure that cases progress in a timely manner. VEC's involvement in the depositions will not further that goal, particularly in light of the significant number of depositions to be completed in relatively little time. For this reason, VEC may attend depositions noticed in this case as an observer, but it may not question the witnesses.

## CONCLUSION

**WHEREFORE**, the Court resolves DN 86 and 87 as follows: Non-parties are not authorized to question witnesses during depositions noticed in this case, **AND** AIS is authorized to conduct the additional discovery depositions identified in its pleadings.

*H. Brent Brennenstuhl*
**H. Brent Brennenstuhl**
**United States Magistrate Judge**

April 2, 2021

Copies:   Counsel of Record