UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:18-CV-00113-BJB-HBB

ADVANTAGE INDUSTIAL SYSTEMS, LLC,                                    PLAINTIFF

VS.

ALERIS ROLLED PRODUCTS, INC.,
commonly known as ALERIS ROLLED
PRODUCTS MANUFACTURING, INC., which
merged with COMMONWEALTH ALUMINUM,                                   DEFENDANT

## MEMORANDUM OPINION
## AND ORDER

Before the Court is the Renewed Motion for Protective Order ["Renewed Motion"] filed by Defendant Aleris Rolled Products, Inc. ["Aleris" (DN 120 and Exhibits 1-3). Plaintiff Advantage Industrial Systems, LLC ("AIS") responded with a memorandum in opposition (DN 126), and Aleris replied with a memorandum (DN 128). Relatedly, AIS has filed an Objection to Defendant's Submission of *In Camera* Documents and Motion to File Surreply to Defendant's Renewed Motion for Protective Order (DN 129), and Aleris has filed a Notice of Supplemental Authority (DN 135). In a separate order, the Court concluded the documents Aleris submitted for *in camera* review and the supplemental authority it filed will not be considered when ruling on the Renewed Motion. For the reasons set forth below, Aleris's renewed motion for protective order is **GRANTED** as Aleris has demonstrated that Documents 1 and 2 are subject to the attorney-client privilege and, as a result, are afforded an absolute protection from discovery.

## Nature of the Case

AIS entered into a written AIA contract ("Contract") with Aleris to erect structural steel and install equipment for two continuous annealing lines with pre-treatment lines (CALP 1 and CALP 2) at Aleris's rolling mill in Lewisport, Kentucky (DN 1 PageID # 2, Complaint; DN 1-2, Exhibit A – AIA Contract).  AIS alleges it performed the work in connection with a $350 million project to convert Aleris's Lewisport Rolling Mill into a state-of-the-art facility with improved rolled aluminum fabrication capabilities for use among various industries including, sheet plate and fabricated products for the automotive, building and construction, and transportation and consumer durable goods industries (DN 1 PageID # 2-8; DN 30 PageID # 540-41; DN 33 PageID # 556).  Aleris asserts the project cost more than $600 million (DN 33-2 PageID # 573 ¶ 10, Declaration of Eric M. Rychel).

The Complaint alleges that Aleris failed to pay AIS for base contract work and additional costs arising from extra work, delays, disruptions, and inefficiencies on the Project (DN 1 PageID # 2-17).  Count I in the Complaint asserts a breach of contract claim; Count II raises a claim under the Kentucky Fairness in Construction Act; and Count III presents a quantum meruit/unjust enrichment claim (Id. at PageID # 17-19).  AIS seeks a monetary damage award of an amount not less than the base contract amount of $1,518,610.79; impact costs; interest in accordance with KRS 371.405 et seq.; attorney fees in accordance with KRS 371.415; collection costs; pre- and post-judgment interest (Id. at PageID # 19).

Aleris responded to the Complaint with an Answer asserting seventeen defenses and two counterclaims (DN 18 PageID # 199-213).  Count I of the counterclaims alleges that AIS committed numerous material breaches of the Contract which have damaged Aleris in an amount equal to or greater than $4,900,000.00 (Id. at PageID # 206-11).  Count II asserts a claim of unjust

enrichment/quantum meruit that is pled in the alternative to Count I (Id. at PageID # 211-13).  AIS responded to Aleris's counterclaims with an Answer asserting ten defenses (DN 19 PageID # 464-68).

**Procedural Background**

The Original Motion

Aleris previously filed a Motion for Protective Order and Motion to Quash Subpoena to Non-Party Joseph Klink ["Motion for Protective Order"] (DN 76).  In the original motion, Aleris moved for a protective order and to quash a subpoena issued to non-party Joseph Klink (Id.).  At issue were five documents Klink prepared (Id. at PageID # 1163-66).  AIS had issued a subpoena *duces tecum* to Klink seeking testimony and production of the documents (Id. at PageID # 1168-69).  Aleris contended the documents were privileged (Id. at PageID # 1173-78).  Aleris also asked that Klink's deposition be postponed until the privilege issue was resolved (Id. at PageID # 1179-81).  Aleris asked that if Klink is to be questioned about the documents, it be done by written questions (Id. at PageID # 1180).  Finally, Aleris asked that Klink's deposition be closed to non-parties (Id. at PageID # 1181).

Aleris contends that when it hired Klink in March 2016, as a consultant on the Lewisport Rolling Mill project, Klink executed a consulting agreement which included confidentiality provisions (Id. at PageID # 1161) (citing DN 76-4).  Klink worked on the project until his employment was terminated in November 2016 (Id. at PageID # 1162-63).  Aleris asserts that, while working on the Lewisport project beginning around April 2016, Klink was privy to weekly meetings with Aleris management, in-house counsel and outside counsel to discuss possible litigation arising from the project (Id.).  Specifically, Aleris asserts that these meetings afforded Klink "special knowledge and insight to which he might not otherwise have access" and he

frequently communicated with Aleris' counsel assessing potential claims for litigation purposes (Id.).  Aleris claims Klink prepared the five documents during his final week of employment, and the documents were protected from discovery by attorney-client and work-product privilege (Id. at PageID # 1163-66).

A complicating factor is that Klink and Aleris have parted ways on unfavorable terms. Aleris claims that Klink has violated his confidentiality agreement by retaining possession of sensitive documents, communicating about the case with opposing counsel, and offering his services as a consultant for the opposing party (Id. at PageID # 1166-68).

Aleris submitted the five documents to the undersigned for *in camera* inspection (Id. at PageID # 1163).  The documents are highly technical in nature, and the undersigned was unable to determine from their faces whether they constituted privileged attorney-client communications or were prepared in anticipation of litigation (DN 78 PageID # 1257).

Aleris provided affidavits from various witnesses discussing the circumstances surrounding the creation of the documents and opinions regarding their privileged nature (DN 76-1, 76-2, 76-3).  More specifically, Aleris submitted an affidavit from Alvin Huenink, a consultant holding the title "Project Services Manager" who worked on the project and to whom Klink "generally reported to . . . for most matters" (DN 76-1 PageID # 1184, Declaration of Al Huenink ["Huenink Dec."]).  Huenink opined that Klink could only have obtained knowledge about some of the issues discussed in the documents through privileged discussions with Aleris' in-house and outside counsel and attendance at the strategy meetings (Id.).

Further, Aleris submitted an affidavit from Aleris Project Director Ramon Mella who also opines that Klink's documents were prepared based on knowledge gleaned from the strategy meetings with counsel (DN 76-2 PageID # 1198, Declaration of Ramon Mella ["Mella Dec."]).

4

He testifies that the documents are not of the sort prepared by Aleris in the ordinary course of business, and, if they were, Klink would not be the person to draft them (Id.). He concludes that "Klink drafted them in part as part of the turn-over process to inform his successor about pending claims and defenses involving certain contractors" (Id.).

Additionally, Aleris submitted an affidavit from outside counsel Brittany Yantis (DN 76-3, Declaration of Brittany Yantis ["Yantis Dec."]), who testified that she works on litigation involving Aleris and manages the database containing Aleris' documents and e-mails collected and preserved for this litigation (Id. at PageID # 1200). Her review of the metadata associated with the privileged documents reveals that they were all last modified during Klink's final week of employment on the project, which was after her firm was retained as outside counsel (Id. at PageID # 1201).

AIS counters that Aleris' privilege/protection argument is built on "guesswork and innuendo" (DN 77 PageID # 1239). AIS asserts the mere fact that the names of Klink and Aleris' counsel appear together in word-searches of Aleris' e-mail database do not prove the five documents at issue were prepared in anticipation of litigation (Id. at PageID # 1239, 1243). AIS similarly asserts, the fact that Klink prepared the documents during the time Aleris was communicating with contractors about potential default does not prove the documents were prepared in anticipation of litigation (Id. at PageID # 1239, 1244). The affidavits, AIS contends, only speculate Klink "gleaned" knowledge from the strategy meetings with counsel and do not indicate that anyone asked Klink to prepare the documents or that he told anyone why he prepared the documents (Id. at PageID # 1239, 1247).

AIS also notes that Klink's contract for services does not indicate he was retained for the purposes of assisting in the legal claim or in anticipation of litigation (Id. at PageID # 1242). To

the contrary, the contract required Klink to provide oversight on the project contractors, vendors, and suppliers (Id. at PageID # 1241).  AIS additionally points out, when Klink e-mailed the documents, he did not send them to Aleris' in-house or outside counsel (Id. at PageID # 1243).  As to Klink's participation in "strategy meetings," AIS notes that merely because an attorney was in attendance at the meetings does not automatically cast a blanket of privilege over the discussions (Id. at PageID # 1244).  Aleris asserts, rather than speculate on the when and why of the documents, it should be permitted to develop the record with testimony from Klink (Id. at PageID # 1245).

The Initial Ruling

After considering the evidence and arguments of the parties, the undesigned concluded the record needed further development (DN 78 PageID # 1264-65).  The undersigned reasoned that Klink himself would be the best source of information about the "when and why" of the documents and allowed AIS to go forward with a limited deposition of Klink insofar as the documents in question were concerned, permitting questions "about facts associated with whether the documents are privileged and not about the contents of the documents" (Id. at PageID # 1265-68).  As a result, the undersigned denied the motion to quash the subpoena *duces tecum* issued to Klink but instructed "he may only be questioned at this time about facts associated with whether the documents are privileged and not about the contents of the documents" (Id. at PageID # 1268). Additionally, the undersigned restricted attendance at Klink's deposition to party attorneys and party representatives as a reasonable means of ameliorating the risk that non-parties might become privy to testimony by Klink that discloses privileged information (Id. at PageID # 1267).  The undersigned deferred ruling on whether the documents were privileged (Id. at PageID # 1268).

Subsequent Development of the Record

The parties subsequently deposed Klink on November 9, 2020, April 22, 2021, and June 23, 2021, and the transcripts are part of the record (*see* DN 121 PageID # 2375-2584, 2585-2614, 2615-2750). Additionally, Aleris has submitted the Declaration of Brian Coate ["Coate Dec."], who served as in-house legal counsel from May 2005 to July 2018 (DN 120-2).

The Renewed Motion

Aleris' Renewed Motion narrows the number of documents for which it seeks a protective order to only two (DN 120 PageID # 2309). Based on the facts and evidence, Aleris believes the two documents qualify as privileged and work product material (DN 120 PageID # 2309). The first document is a memorandum titled "AIS CALP 1 and 2 Mechanical Equipment Installation Contractor Commercial Risk Review" ["Risk Review"] and is referred to in the Motion for Protective Order and Klink's depositions as "Document 2" (Id. at PageID # 2309). The second document is a memorandum titled "Aleris Lewisport CALP ABS Project PM Observations" ["Memorandum"] and is referred to in the Motion for Protective Order and Klink's depositions as Document 1" (Id. at PageID # 2310).

Arguments of the Parties

Aleris advises that Klink created the Risk Review document and last modified it on November 12, 2016, despite Klink dating the document November 13, 2016 (Id. at PageID # 2309) (citing DN 76-3 ¶ 7, Yantis Dec.). Aleris indicates the document "details various issues on the Project pertaining to AIS specifically" (Id. at PageID # 2309). Aleris contends "the contents of the Risk Review were derived by Klink from information conveyed to him during several legal strategy meetings (the "Legal Team Meetings"), that Klink attended with Aleris' in-house counsel, outside counsel, and Aleris' expert witness" (Id. at PageID # 2309) (citing DN 120-2 ¶ 13, Coate

7

Dec.).  Aleris indicates around the time Klink prepared this document, Aleris issued a Notice of Default to AIS for its failure to perform its obligations on the Project (Id. at PageID # 2309-10) (citing DN 76-1 ¶¶ 8-9, Huenink Dec.).  Further, Aleris points out that Klink's November 12, 2016 email forwarding the Risk Review to other Aleris personal confirms it is "for your use in Claims preparation and defense when needed" (Id. at PageID # 2310) (citing DN 76-5 PageID # 1212, Exhibit B).  Additionally, Aleris points out that Klink's contemporaneously made time records indicate 100% of his time during the week he prepared the Risk Review was dedicated to "AIS Claim Book Prep." (Id. at PageID # 2310) (quoting DN 76-6 PageID # 1214).

Aleris advises that Klink testified he created the Memorandum in early November 2016 (Id. at PageID # 2310) (citing DN 120-1 # 2329, lns. 4-24, Klink Depo. Vol. 1).  Metadata shows it was last modified by Klink on November 7, 2016 (Id. at PageID # 2310) (citing DN 76-3 ¶ 6, Yantis Dec.).  According to Aleris, Klink discusses various issues on Aleris' construction project, including issues pertaining specifically to subcontractor CH2M Hill which had already been descoped from the Project by that time, meaning the Memorandum did not concern Klink's ongoing observations regarding CH2M (Id. at PageID # 2310) (citing DN 120-2 ¶ 14, Coate Dec.).  Aleris contends the contents of the Memorandum were derived by Klink from the information he received at the Legal Team Meetings he attended with Aleris' counsel (Id. at PageID # 2310) (citing DN 120-2 ¶ 13, Coate Dec.).

Aleris provides several examples substantiating its assertion that Klink's testimony is contradictory, unreliable, and untruthful evidence that the Court should not rely on in determining whether the two documents are subject to the attorney-client privilege or work product protection (Id. at PageID # 2310-14, 2317-19).  Aleris encourages the Court to instead rely on the Declaration of Brian Coate, in-house counsel for Aleris during the relevant time frame, which is consistent

with other reliable evidence, such as the Declarations of Alvin Huenink and Ramon Mella, in determining whether the two documents are subject to the attorney-client privilege or work product protection (Id. at PageID # 2314-17).  Aleris argues the Risk Review and Memorandum constitute attorney-client privileged and work product protected materials (Id. at PageID # 2319-23).

As to work product, Aleris contends that the Coate Declaration shows that the Risk Review and Memorandum were prepared by an Aleris representative, Klink, when litigation with AIS, VEC, and CH2M Hill was subjectively and objectively anticipated (Id. at PageID # 2320-21). Further, the information contained in the Risk Review and Memorandum was based on legal advice conveyed at the Legal Team Meetings and was prepared for the purpose of Aleris obtaining legal advice, as opposed to ordinary business purposes (Id. at PageID # 2320-21).  For similar reasons, Aleris argues the Risk Review and Memorandum are attorney-client privileged (Id. at PageID # 2322).  Aleris points out that the Coate Declaration and other evidence "shows that the information contained in the documents was conveyed at the Legal Team Meetings 'for the purpose of facilitating the rendition of professional legal services' to Aleris" (Id. at PageID # 2322) (quoting Ky. R. Evid. 503(b)).  Aleris contends, in November 2016, it was actively contemplating potential claims against AIS and CH2M Hill as well as "actively discussing the underlying issues in the 'legal meetings' that Klink attended with Aleris' in-house and outside counsel, and the information contained in the Risk Review and Memorandum was conveyed to Klink for the purpose of rendering legal services to Aleris" (Id. at PageID # 2322).  Additionally, Aleris asserts that the evidence it has submitted shows "the Legal Team Meetings are the only possible source for the information in the subject documents" (Id. at PageID # 2322).  Aleris believes it is "irrelevant whether the Risk Review or Memorandum were actually prepared by or sent to attorneys" (Id. at PageID # 2322) (citing Darby v. Gordon Food Serv., Inc., No. 3:11-CV-646-S,

9

2013 WL 5354208, at *4 (W.D. Ky. Sept. 24, 2013) (holding attorney-client privilege barred disclosure of certain documents, even though counsel was not copied on the documents). For these reasons, Aleris contends "the Risk Review and Memorandum meet all requisites to qualify as attorney-client privileged materials" (Id. at PageID # 2322) (citing Ky. R. Evid. 503).

In response, AIS indicates the Risk Review and Memorandum "contain information relevant and material to the instant suit, including but not limited to information about: AIS change orders; payment and non-payment by Aleris to AIS for work done pursuant to those orders and/or pursuant to the underlying construction contract; AIS claims for payment; and other similar information related to the costs, management, and progress of the CALP projects" (DN 126 PageID # 2774). As to the attorney-client privilege, AIS contends the facts and circumstances demonstrate Klink did not prepare the two documents to facilitate the rendition of legal services; he instead prepared them to facilitate the transition/turnover from Klink to the incoming change manager/estimator David Freelander (Id. at PageID # 2783-84) (citing Ky. R. Evid. 503(a)(2)(B) and (b) (privilege only applies if communications are made to effectuate legal representation or facilitate the rendition of legal services).[1] AIS argues because Klink testified that he was unaware of any Aleris litigation and no one asked him to prepare the documents because of litigation, there is no evidence indicating Klink thought he was preparing the documents to obtain legal advice (Id.

---

[1] AIS acknowledges that Klink's deposition testimony indicates he attended six to ten meetings where Aleris lawyers were present (DN 126 PageID # 2777) (citing DN 121 PageID # 2493, Klink Depo. Vol. 1). Further, Klink testified that he did not believe he derived any information from his attendance at the meetings and recalled no discussion about AIS (Id. at PageID # 2777) (citing DN 121 PageID # 2445-46, 2493, 2499-2500, Klink Depo. Vol. 1). AIS points out that Klink testified at the time the meetings occurred, he had no idea whether AIS had filed a lawsuit against Aleris or whether AIS had threatened to sue Aleris (Id. at PageID # 2777) (citing DN 121 PageID # 2738, Klink Depo. Vol. III). Additionally, Klink testified he never talked with Aleris' attorneys outside the meetings (Id. at PageID # 2777) (citing DN 121 PageID # 2493-94, Klink Depo. Vol. I). Moreover, suggests AIS, Klink testified he prepared the two documents on his own volition, as part of the turnover/transition between him and his successor David Freelander, and the documents do not reflect information he obtained during the meetings with Aleris' attorneys (Id. at PageID # 2777) (citing DN 121 PageID # 2497-2500, 2508-09, 2512, Klink Depo. Vol. I). Klink's testified that he sent the two documents to his successor David Freelander, Klink's direct supervisor Hawkins, Hawkins' supervisor Huenik, and Mella the company vice president (Id. at PageID # 2779) (citing DN 121 PageID # 2500, 2514-15, Klink Depo. Vol. I).

at PageID # 2784) (citing Frankfort Reg'l Med. Ctr. v. Shepherd, No. 2015-SC-000438-MR, 2016 WL 3376030, at *6 (Ky. June 16, 2016) (indicating privilege does not apply if communications are not made to effectuate legal representation)). Further, AIS asserts because Klink testified that he wrote the documents to aid in the transition to the new change manager/estimator without any consideration by Klink of any lawsuits, there is no evidence the two documents were necessary to obtain legal advice or that they would not have been prepared absent some privilege (Id. at PageID # 2784) (citing Lexington Pub. Library v. Clark, 90 S.W.3d 53, 60 (Ky. 2002) (privilege protects only communications that are necessary to obtain legal advice and that might not have been made absent the privilege)). Additionally, AIS disputes whether there is evidence showing confidential communications occurred during the meetings attended by Aleris' attorneys, but even if there were confidential communications during the meetings, the facts Klink included in the two documents (including facts about AIS change orders and claims) are not protected from discovery because Klink learned those facts directly from his work as a change manager/estimator on the Aleris job (Id. at PageID # 2785) (citing Erickson v. Hocking Tech. Coll., No. 2:17-CV-360, 2018 WL 9414018, at *2 (S.D. Ohio Mar. 27, 2018) (presence of attorneys at a meeting does not shield otherwise unprivileged communications from disclosure); Meadowview Reg'l Med. Ctr., LLC. v. Wood, No. 2008-SC-000506-MR, 2009 WL 735957, at *2 (Ky. Mar. 19, 2008) (same); Collins v. Braden, 384 S.W.3d 154, 159 (Ky. 2012) (even when communications during business meetings are privileged, the underlying facts are not privileged)). To the extent the confidentiality agreement between Klink and Aleris applies to the two documents, it does not create a privilege upon which Aleris can refuse to disclose the two documents (Id. at PageID # 2786) (citing Saini v. Int'l Game Tech., 434 F. Supp. 2d 913, 922 (D. Nev. 2006) (confidentiality agreements between employer and employee do not preclude discovery); Diamond Resorts Int'l, Inc. v. Phillips,

No. 3:17-CV-01124, 2018 WL 3326814, at *2 (M.D. Tenn. Apr. 17, 2018) (same)).  In sum, AIS asserts that Klink's deposition testimony demonstrates Klink created the Risk Review and Memorandum in the normal course of his job as outgoing change manager/estimator for Aleris, a position in which he reviewed and settled construction change orders and claims for payment submitted by contractors, including AIS, and not in order to facilitate the rendition of legal services (Id. at PageID # 2773).

As to work product protection, AIS contends the facts and circumstances identified above demonstrate there is no basis upon which to conclude Klink prepared the two documents in anticipation of litigation or for trial (Id. at PageID # 2788-89) (citing Fed. R. Civ. P. 26(b)(3)). Instead, the facts and circumstances show that Klink prepared the two documents in anticipation that, after his leaving Aleris, he would be succeeded by a new change manager/estimator who, along with Aleris as a whole, would need the managerial information in the two documents (Id. at PageID # 2788-89) (citing Fed. R. Civ. P. 26(b)(3) (work product doctrine protects only those documents prepared in anticipation of litigation or trial); United States v. Roxworthy, 457 F.3d 590, 593-94 (6th Cir. 2006) (doctrine does not protect documents prepared for ordinary business purposes)).  To the extent Klink may have prepared the two documents with the intention of avoiding potential litigation in the future, such an intention would not render the documents subject to work product protection (Id. at PageID # 2789) (citing Univ. Hosps Health Sys. v. Pohl Inc. of Am., No. 1:15-CV-2461, 2018 WL 1474368, at *4 (N.D. Ohio Mar. 23, 2018) (documents must be prepared because of actual or impending litigation); Ford Motor Co. v. Mich. Consol. Gas Co., No. 08-CV-13503, 2013 WL 5435184, at *4 (E.D. Mich. Sept. 27, 2013) (documents prepared to avoid litigation are not work product); Univ. of Ky. v. Lexington H-L Servs., Inc., 579 S.W.3d 858, 865 (Ky. App. 2018) (mere potential for later litigation does not make document work

12

product)).  Moreover, the confidentiality agreement between Klink and Aleris does not render Klink's preparation of the two documents work product (Id. at PageID # 2790) (citing Saini, 434 F. Supp. 2d at 922 (confidentiality agreements between employer and employee do not preclude discovery); Diamond, 2018 WL 3326814, at *2 (same)).  In sum, AIS asserts that Klink's deposition testimony demonstrates Klink created the Risk Review and Memorandum in the normal course of his job as outgoing change manager/estimator for Aleris, a position in which he reviewed and settled construction change orders and claims for payment submitted by contractors, including AIS, not in anticipation of litigation or for trial (Id. at PageID # 2773).

For the above reasons, AIS argues Aleris cannot meet its burden of proving the Risk Review and Memorandum are subject to the attorney-client privilege or work product protection, and the Court should order Aleris to produce these documents (Id. at PageID # 2773).

In reply, Aleris asserts the Declarations of Coate, Huenink, and Mella show the entire purpose of the Legal Team Meetings was to discuss anticipated litigation against contractors on Aleris' expansive Project, including AIS, CH2M Hill, and VEC (DN 128 PageID # 2805).  Aleris contends that AIS' response "mostly ignores that the **source for the information in the documents** was the Legal Team Meetings, and instead focuses almost entirely on Klink's **creation** of the documents (and even then AIS avoids addressing the numerous contradictions and inconsistencies in Klink's testimony)" (Id. at PageID # 2805) (emphasis in original).  Aleris explains that AIS's focus on the creation of the two documents is misplaced because it ignores applicable legal principles and evidence cited by Aleris which focus on the source of the documents' content (Id. at PageID # 2805-07, 2809).  According to Aleris, the significant unrefuted evidence shows that the Memorandum and Risk Review memorialize intangible work product and attorney-client privileged communications conveyed at the Legal Team Meetings (Id.

at PageID # 2805-07) (citing Hickman v. Taylor, 329 U.S. 495, 511-14 (1947) (recognizing intangible information created in anticipation of litigation is subject to work product protection); United States v. Deloitte, LLP, 610 F.3d 129, 136-38 (D.C. Cir. 2010) (document memorializing intangible work product is subject to work product protection); St. Luke Hosps., Inc. v. Kopowski, 160 S.W.3d 771, 776-77 (Ky. 2005) (attorney-client privilege applies to written statements memorializing oral communications between nurse and hospital representative made for the purpose of rendering legal services). Aleris argues that AIS fails to challenge important portions of the Declarations of Coate, Mella, and Huennink indicating that the information in the Risk Review and Memorandum was derived from the Legal Team Meetings (Id. at PageID # 2807-09).[2] Moreover, the Declarations of Mella and Huenink establish that neither document was prepared in the ordinary course of business by or for Aleris, and that litigation was anticipated (Id. at PageID # 2809). Aleris asserts that AIS' focus—who created the documents at whose direction as well as the sender and recipients of the documents—ignores both the evidence and legal analysis showing both documents are subject to work product protection and attorney-client privilege because they contain information prepared in anticipation of litigation, and contain information conveyed at the Legal Team Meetings for the purpose of rendering legal services to Aleris (Id. at PageID # 2809).

---

[2] Aleris contends that AIS does not directly challenge portions of the Coate Declaration indicating: (1) the Legal Team Meetings were "scheduled solely for the purpose of discussing legal issues and providing legal advice to Aleris" and "were not for general business purposes"; (2) during the Legal Team Meetings, they discussed issues that "had escalated to the point of being in anticipation of litigation"; (3) the invitation to Klink to attend the Legal Team Meetings explained the purpose of the meetings was to discuss legal claims related to the Project; (4) as an attendee, Klink was "privy to all the legal advice, analysis, and strategy discussed" at the Legal Team Meetings, and Klink was "tasked with populating and maintaining the risk register for the entire Project" which was used to "identify issues . . . that the Legal Team and Site Team anticipated . . . being the subject of litigation[,]" including issues related to AIS, VEC, and CH2M Hill; (5) agendas for the Legal Team Meetings attended by Klink "include[d] a discussion of legal topics associated with AIS, VEC, and CH2M Hill"; (6) a majority of the information in the Memorandum and Risk Review was derived from Klink attending the Legal Team Meetings and was discussed or conveyed for the purpose of providing legal advice to Aleris, and such information was otherwise beyond the scope of Klink's work and the information he would have had access to; and (7) Klink created the Memorandum and Risk Review after Aleris sent a default notice to VEC and around the time Aleris sent a default notice to AIS (DN 128 at PageID # 2807) (quoting DN 120-2 ¶¶ 4, 5, 7, 9, 10, 12, 13, Coate Dec.).

14

Aleris also contends that AIS' reliance on portions of Klink's deposition testimony to support its position is misguided because AIS is ignoring numerous glaring inconsistencies and contradictions within Klink's own testimony that undermine his credibility and veracity (Id. at PageID # 2810-12).  Aleris suggests that the only remaining evidence for the Court to rely on in ruling on the Renewed Motion is the unrefuted Declarations of Messrs. Coate, Huenink, and Mella, which demonstrate the Memorandum and Risk Review contain work product and attorney-client information (Id. at PageID # 2810-12).  To the extent AIS argues the confidentiality provisions within Klink's Consulting Agreement with Aleris do not automatically make the subject documents Klink created work product or attorney-client privileged, Aleris points out that it has never made such an argument (Id. at PageID # 2013).  Aleris explains that it has instead argued that Klink is unreliable for a multitude of reasons, including repeated violations of his confidentiality obligations (Id. at PageID # 2013).  Further, Aleris explains why the case law AIS cited in the Response is distinguishable or otherwise unsupportive of AIS' arguments (Id. at PageID # 2013-14) (citing Frankfort Reg'l Med. Ctr. v. Shepherd, No. 2015-SC-000438-MR, 2016 WL 3376030 (Ky. June 16, 2016); Erickson v. Hocking Tech. Coll., No. 2:17-CV-360, 2018 WL 9414018 (S.D. Ohio Mar. 27, 2018); Meadowview Reg'l Med. Ctr., LLC v. Wood, 2008-SC-000506-MR, 2009 WL 735957 (Ky. Mar. 19, 2009); SR Int'l Bus. Ins. Co. v. World Trade Ctr. Properties, LLC, No. 01-Civ.-9291 (JSM), 2003 WL 193071 (S.D.N.Y. Jan. 28, 2003); Collins v. Braden, 384 S.W.3d 154 (Ky. 2012)).  Aleris explains that unlike the facts in the cases cited by AIS, the Declarations of Coate, Huenink, and Mella show that the entire purpose of the Legal Teams Meetings was to convey legal advice for the benefit of Aleris (Id. at PageID # 2013-14).  Therefore, the Court should grant Aleris' Renewed Motion and provide the relief request therein,

including finding that the Risk Review and Memorandum are protected from disclosure to AIS by the work product doctrine and attorney-client privilege (Id. at PageID # 2014).

### **Applicable Law**

Relevance

Rule 26(b)(1) of the Federal Rules of Civil Procedure guides the evaluation of any discovery request.  In pertinent part, the Rule provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . ."  Fed. R. Civ. P. 26(b)(1).  The Rule also directs that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable."  Id.

Work Product Protection

Federal law applies to the question whether something is work-product.  Fed. R. Civ. P. 26(b)(3); In re Perrigo Company, 128 F.3d 430, 437 (6th Cir. 1997); Toledo Edison Co. v. G.A. Technologies, Inc., 847 F.2d 335, 338-40 (6th Cir. 1988).  Work product is not subject to a privilege as the term is used in the Federal Rules of Civil Procedure or the law of evidence. Hickman v. Taylor, 329 U.S. 495, 509-10 & n.9 (1947).  Instead, it receives a qualified protection from discovery because work product—except for that which reveals the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation—is discoverable if an adverse party demonstrates "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by any other means."  Fed. R. Civ. P. 26(b)(3)(A)(ii) and (B); In re Perrigo Co., 128 F.3d at 437; Toledo Edison Co., 847 F.2d at 338-41.  Thus, if a court orders discovery of work product, "it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  Fed. R. Civ. P. 26(b)(3)(B).

The Supreme Court first enunciated the protection afforded work product in <u>Hickman</u> and Rule 26(b)(3) later codified part of this protection.  Fed. R. Civ. P. 26 Advisory Committee Notes. The scope of Rule 26(b)(3)(A) is limited to documents and tangible things, <u>In re Perrigo Co.</u>, 128 F.3d at 437, whereas the principles enunciated in <u>Hickman</u> apply to non-tangible work product sought through depositions, interrogatories, and requests for admissions.  <u>United States v. One Tract of Real Property</u>, 95 F.3d 422, 427-28 & n.10 (6th Cir. 1996).

The Sixth Circuit has adopted the "because of" test for assessing whether material at issue has been prepared in anticipation of litigation.  <u>United States v. Roxworthy</u>, 457 F.3d 590, 594 (6th Cir. 2006).  The test "asks: (1) whether that document was created because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose, and (2) whether that subjective anticipation was objectively reasonable." <u>Id.</u>; *see also* <u>Gruenbaum v. Werner Enters., Inc.</u>, 270 F.R.D. 298, 304 (S.D. Ohio 2010) (citations omitted).

Where documents are prepared in the ordinary course of business, pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes, the work-product privilege is inapplicable.  <u>Roxworthy</u>, 457 F.3d at 593.  However, if a document is prepared in anticipation of litigation, the fact that it that it also serves an ordinary business purpose does not deprive it of protection.  <u>Id.</u> at 598-99.  Such documents do not lose their work product privilege "'unless the documents would have been created in essentially similar form irrespective of the litigation.'" <u>Id.</u> at 599 (quoting <u>United States v. Adlman</u>, 134 F.3d 1194, 1202 (2nd Cir. 1998)); *see also* <u>Invesco Institutional (N.A.), Inc. v. Paas</u>, 244 F.R.D. 374, 386 (W.D. Ky. 2007) (A document is not protected if it would have been prepared in substantially the same manner irrespective of the anticipated litigation).  Based on these principles, Aleris, the party asserting work product

protection, bears the burden of showing that "anticipated litigation was the driving force behind the preparation of each requested document." Gruenbaum, 270 F.R.D. at 304 (citations omitted).

Attorney-Client Privilege

"Rule 26(b)(1) of the Federal Rules of Civil Procedure mandates that privileged matters are afforded an absolute protection from discovery." Whitaker v. ABF Freight Sys., Inc., No. 1:17-CV-00206-GNS-HBB, 2019 WL 1966122, at *2 (W.D. Ky. May 2, 2019). "The privilege for communications between an attorney and a client is 'the oldest of the privileges for confidential communications known to the common law.'" Invesco Institutional, Inc., 244 F.R.D. at 381 (quoting United States v. Zolin, 91 U.S. 554, 563 (1989)).

Rule 501 of the Federal Rules of Evidence directs when state law supplies the rule of decision as to the claims and defenses raised in a diversity case, that state's law on privilege should be applied when assessing claims of privilege. *See e.g.* Jewell v. Holzer, 899 F.2d 1507, 1513 (6th Cir. 1990); *see* In re Powerhouse Licensing, LLC, 441 F.3d 467, 472 (6th Cir. 2006) ("In a diversity case, . . . the court applies state law to resolve attorney-client claims."). Here, Kentucky state law supplies the rule of decision as to the claims and defenses raised in this diversity case (DN 1 PageID # 17-19; DN 18 PageID # 198-212; DN 19 PageID # 462-68). Consequently, Kentucky state law on privilege applies to this discovery dispute.

Kentucky's law on the attorney-client privilege is embodied in Rule 503 of the Kentucky Rules of Evidence. In relevant part, the Rule provides:

> A client has a privilege to refuse to disclose and prevent any other person from disclosing a confidential communication made for the purpose of facilitating the rendition of professional legal services to the client:
>
> (1) Between the client or a representative of the client and the client's lawyer or a representative of the lawyer;

18

(2) Between the lawyer and a representative of the lawyer;

(3) By the client or a representative of the client or the client's lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein;

(4) Between representatives of the client or between the client and a representative of the client; or

(5) Among lawyers and their representatives representing the same client.

*See* KRE 503(b).

The definition section of Rule 503 explains that "[a] communication is 'confidential' if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." KRE 503(a)(5). Additionally, the definition section reads:

(2) "Representative of the client" means:

(A) A person having authority to obtain professional legal services, or to act on advice thereby rendered on behalf of the client; or

(B) Any employee or representative of the client who makes or receives a confidential communication:

(i)     In the course and scope of his or her employment;

(ii)    Concerning the subject matter of his or her employment; and

(iii) To effectuate legal representation for the client.

KRE 503(a)(2).

As Aleris is asserting the claim of attorney-client privilege, it has the burden of demonstrating the applicability of the privilege to the two documents at issue. <u>Boodram v.</u>

Coomes, No. 1:12-CV-00057-JHM, 2015 U.S. Dist. LEXIS 198536, at *7 (W.D. Ky. Sept. 24, 2015); Haney v. Yates, 40 S.W.3d 352, 355 (Ky. 2000) (citing Sisters of Charity Health Sys. v. Raikes, 984 S.W.2d 464, 469 (Ky. 1998); Shobe v. EPI Corp., 815 S.W.2d 395 (Ky. 1991); Robert G. Lawson, *The Kentucky Evidence Law Handbook*, § 5.05, p. 229 (3d ed. Michie 1993)).  Further, in addressing this discovery dispute, the Court must be mindful that "privileges should be strictly construed, because they contravene the fundamental principle that 'the public . . . has a right to every man's evidence.'"  Sisters of Charity, 984 S.W.2d at 468 (quoting Trammel v. United States, 445 U.S. 40, 45 (1980)).  Thus, "broad claims of 'privilege' are disfavored when balanced against the need for litigants to have access to relevant or material evidence."  Meenach v. General Motors Corp., Ky., 891 S.W.2d 398, 402 (Ky. 1995).

## Discussion

To the extent that Aleris is exercising its privilege under KRE 503 to prevent disclosure of the Risk Review and Memorandum, Aleris primarily relies on the Declarations of Coate, Huenink, and Mella to demonstrate the documents drafted by Klink disclose confidential communications between Aleris' representatives and Aleris' lawyers—during the Legal Team Meetings—made for the purpose of facilitating the rendition of professional legal services to Aleris on the Project.  AIS argues Aleris has not demonstrated that confidential communications occurred during the Legal Team Meetings, but even if there were confidential communications, the information in the Risk Review and Memorandum is not privileged or work product because Klink's testimony shows he obtained the information directly from his work as a change manager/estimator and he prepared the documents to facilitate the transition/turnover of job responsibilities from him to the incoming change manager/estimator David Freelander.

The Declaration of Brian Coate establishes that he served as in-house counsel during the relevant time frame and oversaw all legal issues related to the Project (DN 120-2 ¶ 1).  Further, his Declaration indicates that Aleris retained the law firm of Baker & Hostetler, LLP ["BakerHostetler'] to provide legal advice and representation on the Project (Id. at ¶ 2).  Coate explains that Aleris, on advice of BakerHostetler, retained Navigant Consulting, now known as Ankura, to serve as a testifying expert for litigation that arose from the Project (Id. at ¶ 3).  Collectively, Coate refers to himself, BakerHostetler, and Ankura as the "Legal Team" (Id. at ¶ 4).  Coate scheduled and conducted weekly legal strategy meetings with the Legal Team and Aleris' on-site personnel for the sole purpose of discussing the legal claims and legal issues that had escalated to the point of being in anticipation of litigation and to provide legal advice to Aleris and its on-site personnel (Id. at ¶¶ 4, 5).  Coate explained, in addition to retaining BakerHostetler and Ankura, Aleris retained the services of several independent contractors—Huenink, Burnett, and Klink—to work in key positions for the Project and to supplement the in-place management team of Ishmael, Mella, and Miller (Id. at ¶ 6).  Coate's invitation to Messrs. Huenink, Burnett, Klink, Ishmael, Mella, and Miller ["Site Team"] to participate in the Legal Team Meetings explained that the purpose of the meetings was to discuss "legal claims" related to the Project (Id. at ¶ 7).  Coate invited the Site Team members to the Legal Team Meetings so they could be provided with legal advice and consultation by the Legal Team (Id. at ¶7).  Coate explains that the weekly Legal Team Meetings were conducted weekly by conference call and hosted by Coate or attorneys with BakerHostetler, and no one outside the Legal Team, the Site Team, and Aleris personnel participated in these calls (Id. at ¶ 8).  These representations in Coate' Declaration are corroborated by the Declarations of Mella and Huenink (DN 76-2 ¶¶ 3,4; 76-1 ¶¶3, 4).

Coate's Declaration indicates that Klink, while employed by Aleris, attended numerous Legal Team Meetings and was privy to all the legal advice, analysis, and strategy provided and discussed concerning the Project (DN 102-2 ¶ 9).  Additionally, Coate indicates he tasked Klink with populating and maintaining the Risk Register for the Project (Id. at ¶ 9).  According to Coate, the purpose of the Risk Register was to identify issues that had escalated beyond the job site level to the point the Legal Team and the Site Team anticipated the issue being the subject to litigation (Id. at ¶ 9).  Coate explains that the Risk Register included issues pertaining to AIS, VEC, and CH2M Hill (Id. at ¶ 9).  Review of the Legal Team Meeting agendas indicates during the time Klink attended the weekly meetings there were discussions on legal issues concerning AIS, VEC and CH2M Hill, which includes the quality of their work, their inability to meet certain deadlines, defaults, and potential claims and remedies (Id. at ¶ 10).  Coate reviewed the Memorandum and Risk Review documents and advises that at the time Klink prepared the two documents there was anticipation of litigation concerning AIS, VEC, and CH2M Hill arising from the legal issues discussed in the weekly Legal Teams Meetings, including but not limited to the decision to put AIS on notice of default in November 2016 and the decisions to default VEC on August 19, 2016 and terminate VEC on September 19, 2016 (Id. at ¶¶ 11, 12).  Most importantly, Coate's Declaration indicates he reviewed the content in the Memorandum and Risk Review documents and believes the "majority of the information in these documents was derived from Mr. Klink's attendance at the Legal Team Meetings and was discussed or conveyed for the purpose of providing legal advice to Aleris and the Site Team" (Id. ¶ 13).  Coate indicates he reaches this conclusion "because much of the information is beyond Mr. Klink's scope of work and he would not have had access to the information, but for the Legal Team Meetings" (Id. ¶ 13).  To substantiate his representation, Coate points out that the Memorandum contains a number of

22

observations about CH2M Hill but Coate notes that Klink arrived on the Project after "CH2M Hill had been de-scoped from all design and management duties and only maintained a few employees on site for very limited scopes of work, such as OSHA compliance" (Id. at ¶ 14).  Coate explains that the exact issues discussed in the Memorandum were discussed at the Legal Team Meetings as potential litigation issues (Id. at ¶ 14).

The above representations in Coate's Declaration are corroborated by the Declarations of Mella and Huenink (DN 76-2 ¶¶ 4-7; 76-1 ¶¶ 4-6, 7-12).  Additionally, Mella confirms that Aleris does not produce documents like the Memorandum and Risk Review as part of its ordinary business (DN 76-2 ¶ 7).  Further, Huenink confirms that given the scope of Klink's employment and his lack of experience with structural steel, Klink could only have learned about the issues discussed in the Memorandum and Risk Review through the confidential discussions with counsel during the Legal Team Meetings (DN 76-1 ¶ 6).  Mella and Huenink explain that Klink "drafted them in part as part of the turn-over process to inform his successor about pending claims and defenses involving certain contractors" at a time when "litigation with AIS and VEC was definitely on the horizon" (DN 76-1 ¶ 6; DN 76-2 ¶ 7).

AIS does not dispute that Aleris is the "Client" within the meaning of KRE 503(a)(1).  Nor does AIS dispute that Coate and the attorneys of BakerHostetler satisfy the definition of "Lawyer" in KRE 503(a)(3).  The Declarations of Coate, Mella, and Huenink demonstrate that the members of the Site Team, which includes Klink, are "Representatives of the Client" within the meaning of KRE 503(a)(2)(B) because, in the course and scope of their employment, they made and received confidential communications concerning the subject matter of their employment and did so to effectuate legal representation for Aleris.  Moreover, their Declarations show that the Risk Review and Memorandum disclose "confidential" communications within the meaning of KRE 503(a)(5)

23

because they were not intended to be disclosed to third persons other than those to whom the disclosure was made in furtherance of the rendition of professional legal services to Aleris. The Declarations of Coate, Mella, and Huenink also demonstrate Aleris has a privilege within the meaning of KRE 503(b)(1) to prevent the disclosure of the confidential communications made for the purpose of facilitating the rendition of professional legal services to Aleris.

The undersigned had hoped that Klink's deposition would shed light on the issue of whether the Risk Review and Memorandum documents that he prepared should be subject to the attorney-client privilege and work product protection. But Klink's testimony fails to provide definitive statements that are helpful in making the assessments. For example, while Klink at times indicated with varying degrees of conviction that he did not believe he used any information he learned from the Legal Team Meetings (*see* DN 121 Vol. I PageID # 2446, 2492, 2493, 2499-2500, 2512), he also testified "I'm not saying I didn't use anything that was discussed in that meeting. . . . I would say the answer is I have no idea [what I used] because I have never seen the minutes [of the Legal Team Meetings]. So I can't tell you what I used or didn't use." (Id. at Vol. III PageID # 2728-29). Klink also indicated the Risk Review and Memorandum were the product of his daily interactions on the Project, his handling of change orders, and his 35 years of experience (Id. at Vol. I PageID # 2512-13). But Klink's vague representations about the source of his information are refuted by definitive statements in the Declarations of Coate, Mella, and Huenink indicating the majority of the information in the two documents was derived from confidential communications to which Klink was privy as a participant in the Legal Team Meetings and that Klink would not otherwise have access to much of that information because it was beyond the scope of Klink's work on the Project (DN 102-2 ¶¶ 13, 14; 76-1 ¶ 6; 76-2 ¶ 6). Moreover, Klink acknowledged that he does not know nor does he feel qualified to determine

24

whether the confidential communications to which he would have been privy as a participant in the Legal Team Meetings are subject to the attorney-client privilege or work product protection (Id. at Vol. III PageID # 2654-59).

Klink recalled participating in approximately six to ten telephonic meetings on Thursdays and that other participants included Aleris' in-house counsel, Aleris' outside counsel, Steve Collins from Ankura, Mella, Huenink and Burnett (Id. at Vol. III PageID # 2685-87).  Yet Klink claimed not to recall whether there were legal, expert/consultant, and job site components to the meetings, and he feigned a lack of knowledge about the purpose of the meetings despite acknowledging someone probably told him about their purpose (Id. at Vol. III PageID # 2687-88, 2712).  Klink's inability to recall stands in stark contrast to the definitive statements of Coate discussing the various components to the meetings and his invitation to Klink to participate in the Legal Team Meetings for the purpose of discussing legal claims related to the Project (DN 120-2 ¶¶ 3-7). Notably, when asked if AIS was ever discussed during the Legal Team Meetings, Klink testified "I do not recall" but acknowledged "I'm sure they were, it's just that I don't recall it" (DN 121 Vol. I PageID # 2492).  Further, Klink indicated he did not know if a risk register was maintained (Id. at Vol. III PageID # 2689).  But Coate unequivocally indicates during the Legal Team Meetings they discussed AIS and he tasked Klink with populating and maintaining the Risk Register for the entire Project which included issues concerning AIS, VEC, and CH2M Hill (DN 120 ¶¶ 9, 10).

Additionally, evidence revealed during Klink's deposition testimony suggests that his testimony may have been influenced by feelings of animosity toward Aleris and sympathy for AIS and VEC.  For example, Klink maintained that he cannot recall ever talking with Robert Monsour, who is part of AIS' litigation team, but AIS' Supplemental Privilege Log indicates Monsour had

a telephone conversation with Klink on September 19, 2017[3] (DN 121 Vol. II # 2593-96; Vol. III PageID # 2621-23, 2638-39, 2694, 2704-05).  Further, despite acknowledging his duty under the consulting agreement with Aleris to turn over all confidential material upon leaving, Klink acknowledged emailing four Project related documents concerning AIS to his personal email address in November 2016 and that he has failed to destroy them despite an obligation to do so (Id. at Vol. III PageID # 2673-74, 2677-79, 2683-84).

Further examples include November 2017, August 2019, and December 2019 email communications regarding Klink's inclination to talk about AIS' claims with Michael Ahern of AIS, despite Coate advising Klink to cease such communications (Id. at Vol. III PageID # 2690-96) (citing Exhibit 556).  Other examples include Klink's email to Ahern on February 21, 2020, stating "let me know if we are ready to kick some Aleris ass" (Id. at Vol. III PageID # 2697), his email to Ahern on April 14, 2020, indicating he is "pissed" and "willing and ready to rip Aleris a new one, that gets you guys whole and everything you deserve including interest and pain and suffering, pricks" (Id. at Vol. III PageID # 2701), and LinkedIn messaging on April 17, 2020 about Klink participating in a call or video chat to discuss strategy[4] (Id. at Vol. III PageID # 2713-14) (citing Exhibit 557).  Additionally, Klink asked both Ahern and Klink's uncle, who is an attorney, to review his consulting agreement with Aleris because he did not trust Aleris' counsel to be honest

---

[3] AIS' Supplemental Privilege Log indicates AIS is asserting the communication is subject to attorney-client privilege and work product protection (DN 120-3 PageID # 2370).

[4] Klink testified he does not recall what strategy they were going to discuss but acknowledges recommending that Andritz not be included in the meeting because he felt delivery delays by Adritz caused AIS and VECs delay related problems (DN 121 Vol. III PageID # 2713-14).  According to Klink, on the day of the scheduled strategy meeting, he "realized it was stupid to even entertain" talking with AIS and VEC's people so he announced that he could not participate in the meeting (Id. at Vol. III PageID # 2714).  There was also an email from Joe Dabrowski regarding the agenda for a March 20, 2017, telephonic meeting with VEC and NV5 (Id. at Vol. III PageID # 2714-15) (citing Exhibit 558).  Klink testified that he did not attend the meeting and did not have any discussion with VEC and NV5 regarding the items on the meeting agenda because he realized he should not participate (Id. at Vol. III PageID # 2714-15) (citing Exhibit 558).

about whether Klink could talk with AIS (Id. at Vol. III PageID # 2681-82, 2703).   Moreover, Klink testified that he was upset with Aleris for treating AIS unfairly for years instead of settling AIS' meritorious and substantial claims and because of Aleris' threatening cease and desist letters to Klink (Id. at Vol. III PageID # 2697-2707, 2709-12).   When asked if Klink ever tried to solicit work from AIS to help with its claim analysis on this case, Klink responded, "If I knew that my contract allowed it, I would have considered it.   But once I did the contract research and realized I have a nondisclosure agreement and I can't, I immediately said, no, I will not."   (Id. at Vol. III PageID # 2715-16).   However, Klink suggests this realization occurred in January or February 2020 or perhaps in April 2020, just before he was supposed to attend an AIS strategy meeting (Id. at Vol. III PageID # 2716-17).

The above cited evidence may explain Klink's uncertain, and at times ambiguous, testimony concerning the source of the information in the Risk Review and Memorandum.   But what really matters is Klink's testimony fails to provide definitive statements that are helpful in making the assessment.   At best, Klink's testimony indicates that the Court must look to the Declarations of Coate, Mella, and Huenink for some degree of certainty on this question.   And, as explained above, their declarations demonstrate the source of the information in the Risk Review and Memorandum is "confidential" communications within the meaning of KRE 503(a)(5) that occurred during the Legal Team Meetings.   Therefore, pursuant to KRE 503(b) the Risk Review and Memorandum are subject to the attorney-client privilege, and Aleris can prevent the disclosure of these documents memorializing confidential communications between Aleris' representatives and lawyers—during the Legal Team Meetings—made for the purpose of facilitating the rendition of professional legal services to Aleris.

AIS' focus on the circumstances surrounding Klink's creation of the two documents is misguided because it ignores the fact that these documents memorialize confidential communications between Aleris' representatives and lawyers—during the Legal Team Meetings—made for the purpose of facilitating the rendition of professional legal services to Aleris.  KRE 503(b)(1).  *See* St. Luke Hosps., Inc. v. Kopowski, 160 S.W.3d 771, 774, 776-77 (Ky. 2005) (attorney-client privilege applied to written statements memorializing oral communications between nurse and hospital representative made for the purpose of rendering legal services).

AIS' reliance on Frankfort Reg'l Med. Ctr. v. Shepherd, No. 2015-SC-000438-MR, 2016 WL 3376030, at *6 (Ky. June 16, 2016) is misplaced because it holds that the privilege does not apply if communications are not made to effectuate legal representation.  As explained above, these documents memorialize confidential communications between Aleris' representatives and lawyers made for the purpose of effectuating legal representation.  Equally unavailing is AIS' reliance on Klink's testimony which indicated he wrote the documents to aid in the transition to the new change manager/estimator without any consideration lawsuits and obtaining legal advice. Again, the confidential communications during the Legal Team Meetings were made for the purpose of obtaining legal advice.  Lexington Pub. Library v. Clark, 90 S.W.3d 53, 60 (Ky. 2002) (the privilege protects only communications necessary to obtain legal advice which might not have been made absent the privilege).  Klink memorialized the confidential communications in the documents he drafted.  Thus, the privilege survives regardless of Klink's intent because only the client, Aleris, may waive the attorney-client privilege, and there is no evidence Aleris consented to disclosure of the privileged information to a third party.  3M Co. v. Engle, 328 S.W.3d 184, 188 (Ky. 2010).

28

As the confidential communications during the Legal Team Meetings were made for the purpose of obtaining legal advice, the following cases cited by AIS are not applicable to the circumstances. *See* Erickson v. Hocking Tech. Coll., No. 2:17-CV-360, 2018 WL 9414018, at *2 (S.D. Ohio Mar. 27, 2018) (presence of attorneys at a meeting does not shield otherwise unprivileged communications from disclosure); Meadowview Reg'l Med. Ctr., LLC. v. Wood, No. 2008-SC-000506-MR, 2009 WL 735957, at *2 (Ky. Mar. 19, 2009) (same); Collins v. Braden, 384 S.W.3d 154, 159 (Ky. 2012) (even when communications during business meetings are privileged, the underlying facts are not privileged).  In sum, AIS has not rebutted Aleris' demonstration that the Risk Review and Memorandum are subject to the attorney-client privilege.

Inasmuch as the Risk Review and Memorandum are subject to the attorney-client privilege, the Court declines to continue and consider whether the documents are subject to the work product doctrine.

## **ORDER**

**IT IS HEREBY ORDERED** that Aleris's renewed motion for protective order (DN 120) is **GRANTED**.

**IT IS FURTHER ORDERED** that AIS may not depose Mr. Klink regarding the content of the Risk Review and Memorandum (Documents 1 and 2) because they are subject to the attorney-client privilege.

29

**IT IS FURTHER ORDERED** that within fifteen (15) days of the date of this order, AIS and its counsel shall certify that they have clawed back and destroyed all copies of Documents 1 and 2, including any copies sequestered by AIS' counsel.

December 22, 2021

H. Brent Brennenstuhl
United States Magistrate Judge

Copies:          Counsel